149 F.3d 413
 41 Fed.R.Serv.3d 145
 Kristen M. GOOD, as Co-Administrator WWA of the Estates of
Roland W. Good and Judith E. Good, et al., Plaintiffs,
v.
OHIO EDISON COMPANY, Defendant/Third-Party Plaintiff-Appellant,
v.
UNITED STATES of America; United States Coast Guard,
Third-Party Defendants-Appellees.
 Nos. 96-4057, 97-3226.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 4, 1998.
Decided July 21, 1998.
 
 Alisa T. Wright (argued and briefed), Norman S. Carr (briefed), Roetzel & Andress, Akron, OH, for Defendant/Third-Party Plaintiff-Appellant in No. 96-4057.
 Alisa T. Wright (argued and briefed), Norman S. Carr (briefed), Roetzel & Andress, Akron, OH, Charles W. Waterfield, Flynn, Py & Kruse, Sandusky, OH, for Defendant/Third-Party Plaintiff-Appellant in No. 97-3226.
 David V. Hutchinson (argued and briefed), Frederick W. Tucher (briefed), U.S. Department of Justice, Civil Division, Torts Branch, Washington, DC, David O. Bauer, Asst. U.S. Attorney, Office of the U.S. Attorney, Western Division, Toledo, OH, for Third-Party Defendants-Appellees in No. 96-4057.
 David V. Hutchinson (argued and briefed), Frederick W. Tucher (briefed), U.S. Department of Justice, Civil Division, Torts Branch, Washington, DC, David O. Bauer, Asst. U.S. Attorney, Robert G. Trusiak, Office of the U.S. Attorney, Western Division, Toledo, OH, for Third-Party Defendants-Appellees in No. 97-3226.
 Before: BATCHELDER and MOORE, Circuit Judges, and BORMAN,* District Judge.
 MOORE, Circuit Judge.
 
 
 1
 Ohio Edison Company, the defendant and third-party plaintiff in these now-consolidated personal injury and wrongful death actions, appeals the district court's dismissal for lack of subject matter jurisdiction under the Suits in Admiralty Act (the "SIAA"), 46 U.S.C.App. § 741 et seq., its claim against third-party defendants-appellees the United States of America and the United States Coast Guard (collectively, the "United States") for contribution and/or indemnity. Ohio Edison also appeals the district court's decision not to alter this final judgment in light of newly discovered evidence as permitted under FED. R. CIV. P. 60(b)(2). For the reasons that follow, we affirm the district court's judgment in both cases.
 
 I. STATEMENT OF FACTS & PROCEDURAL HISTORY
 
 2
 On the evening of August 26, 1995, a pleasure craft traveling through Sandusky Bay collided with the concrete and steel platform base of a transmission tower owned by Ohio Edison. The light[1] (the "Aid") that was supposed to mark this particular pier was extinguished at the time the accident occurred; subsequent inspection by the Coast Guard revealed that the lamp changer was not receiving any power. J.A. at 1779-80 (Anderson Dep. at 33-34); Appellees' Br. at 7. Four passengers died, and the seven others who survived were injured. Four separate actions were commenced by or on behalf of these passengers against Ohio Edison in the Court of Common Pleas of Erie County.[2] In each of these actions, Ohio Edison in turn filed a third-party complaint against the United States based on the SIAA's waiver of sovereign immunity for a government employee's conduct where a private individual would be liable under maritime law for the same actions.[3] J.A. at 89, 94, 108, 113, 124, 129, 142, 147 (Summons against Third-Party). Upon removal to federal court, these actions were consolidated for pre-trial purposes. J.A. at 86, 105, 121, 139 (Notices of Removal).
 
 
 3
 On February 29, 1996, the United States, asserting a lack of subject matter jurisdiction, filed a motion to dismiss and/or for summary judgment. J.A. at 202 (U.S. and Remaining Third-Party Defs.' Mot. for Summ. J.). In response, Ohio Edison filed an initial brief as well as a request pursuant to FED.R.CIV.P. 56(f) to postpone ruling on the motion until additional discovery could be conducted, including the deposing of Coast Guard personnel. J.A. at 226 (Rule 56(f) Mot. to Stay Ruling and to Compel Disc.), 260 (Rule 56(f) Aff. of Carr), 268 (Def. and Third-Party Pl.'s Brief in Opp'n to Mot. for Summ. J.). The district court allowed for a certain amount of additional discovery, in particular granting the motion to compel the deposition of Captain Barlow who was the chief of the Coast Guard Ninth District's Aids to Navigation branch at the time of the accident. J.A. at 358 (Order issued 4/18/96); 705 (Barlow Dep. at 5). Upon completion of this discovery, Ohio Edison filed a supplemental response to the United States' motion, but again requested that further discovery be permitted before the court make a ruling on the motion. J.A. at 388 (Supplemental Br. in Opp'n to Mot. for Summ. J.), 545 (Rule 56(f) Aff. of Carr). Despite this request, on July 12, 1996, the district court granted the United States' motion to dismiss and/or for summary judgment based on its finding that the discretionary function exception applied, depriving the court of subject matter jurisdiction. J.A. at 179 (Op. at 9). The district court found, in the alternative, that in light of applicable statutes, federal regulations, Coast Guard standard operating procedures, and a provision in the permit application signed by Ohio Edison, the Coast Guard had delegated any duties to inspect to Ohio Edison who therefore had no right to indemnity or contribution. J.A. at 180 (Op. at 10). Ohio Edison's motion for reconsideration of this decision was denied on August 20, 1996. J.A. at 619 (Rule 59(e) Mot. to Amend J.), 183 (Mem.Op.). On September 9, 1996, Ohio Edison filed an appeal.[4] J.A. at 192 (Notice of Appeal).
 
 
 4
 After several other witnesses were later deposed, in particular Boatswain Mate Michael Anderson and Joseph Chaykosky, who was the owner and operator of the craft at the time of the accident, Ohio Edison filed a motion for the district court to indicate whether, pursuant to Rule 60(b), it was inclined to alter its prior final judgment[5] in light of this newly discovered evidence of potential relevance to the issue of subject matter jurisdiction. J.A. at 642. The district court declined this invitation on February 25, 1997, concluding that the newly discovered evidence would not alter the court's decision to dismiss. J.A. at 194(Op.). On March 5, 1997, Ohio Edison appealed this decision.[6] J.A. at 198 (Notice of Appeal).
 
 
 5
 The two above appeals have been consolidated for review before this court. The district court had original jurisdiction over this admiralty and maritime case[7] by virtue of 28 U.S.C. § 1333. The basis of this court's appellate jurisdiction over Appeal No. 96-4057 was confirmed and set forth in an Order filed on January 8, 1997 by this court in which it was concluded that Ohio Edison's prematurely filed notice of appeal ripened upon the subsequent entry of a FED.R.CIV.P. 54(b) certification of the partial judgment as a final, appealable decision. See Good v. Ohio Edison Co., 104 F.3d 93 (6th Cir.1997); J.A. at 639-641 (Dist. Ct. Order and J. Entry). With respect to the district court's denial of Ohio Edison's Rule 60(b) motion to relieve it from a final judgment, such a ruling is directly appealable. See Amernational Indus., Inc. v. Action-Tungsram, Inc., 925 F.2d 970, 975 (6th Cir.), cert. denied sub nom. Amernational Indus. v. Electroexportimport, 501 U.S. 1233, 111 S.Ct. 2857, 115 L.Ed.2d 1024 (1991) (citing Peake v. First Nat'l Bank and Trust Co. of Marquette, 717 F.2d 1016, 1020 (6th Cir.1983)); FED.R.CIV.P. 60(b).
 
 II. ANALYSIS
 
 6
 A. United States Coast Guard as a Named Party
 
 
 7
 As an initial matter, the United States claims that it was improper for the Coast Guard to be named as a party to this action. Ohio Edison does not respond to nor dispute the accuracy of this assertion, and our own analysis leads us to agree with the United States.
 
 
 8
 The general rule is that a federal administrative agency cannot be sued in its own name unless such suits are specifically authorized by Congress, typically in the form of a "sue-and-be-sued" clause. See Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Loeffler v. Frank, 486 U.S. 549, 554, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); Gerritsen v. Consulado General De Mexico, 989 F.2d 340, 343 (9th Cir.1993). However, even if such authorization to sue the Coast Guard did exist, the Supreme Court's analysis in Loeffler with respect to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., suggests that the Coast Guard is nevertheless immune from suit in this case. In Loeffler, the United States Postal Service contended that the waiver of sovereign immunity effected by § 717 of Title VII (including its scope) was exclusive in an action brought under Title VII against the Postal Service and replaced the broader waiver of sovereign immunity effected by the "sue-and-be-sued" clause of the Postal Reorganization Act of 1970, 39 U.S.C. § 401(1). See Loeffler, 486 U.S. at 559, 108 S.Ct. 1965. In rejecting this argument, the Supreme Court announced that a waiver of sovereign immunity in a new cause of action will not be presumed to be exclusive unless such an intention is expressly mandated by Congress. See id. at 561, 108 S.Ct. 1965. As further illustration, the Supreme Court contrasted § 717 of Title VII with the FTCA which does expressly state that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." 28 U.S.C. § 2679(a); see also Loeffler, 486 U.S. at 561-62, 108 S.Ct. 1965.
 
 
 9
 Like the FTCA, the SIAA also contains a provision expressly indicating "that the waiver of sovereign immunity it effect[§ is] intended also to narrow the waiver of sovereign immunity of entities [already] subject to sue-and-be-sued clauses." Loeffler, 486 U.S. at 562, 108 S.Ct. 1965. The SIAA only allows for proceedings to be brought against the "United States" [of America] or "any corporation mentioned in section 741 of this title."[8] 46 U.S.C.App. § 742. Title 46 U.S.C.App. § 745 further provides that "where a remedy is provided by this chapter (the SIAA) it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States [of America] or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim...." Thus, just as an FTCA action naming only the United States Post Office and several individual postal workers as defendants must be dismissed for lack of jurisdiction because the United States of America is the only proper defendant in such an action, see Allgeier v. United States, 909 F.2d 869, 871 (6th Cir.1990) (citing 28 U.S.C. § 2679(a)); Myers & Myers, Inc. v. United States Postal Serv., 527 F.2d 1252, 1256 (2d Cir.1975), the Coast Guard cannot be a party to this SIAA action in its own name and must be dismissed as a party.
 
 
 10
 B. Subject Matter Jurisdiction over the United States of America
 
 
 11
 As we previously stated in Rich v. United States, 119 F.3d 447 (6th Cir.1997), while in practice the difference is immaterial, it is more accurate to characterize the United States' motion that was granted by the district court as a motion to dismiss for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1) instead of a motion for summary judgment. See id. at 449 n. 1. A district court's dismissal of claims for lack of subject matter jurisdiction is reviewed de novo on appeal.[9] See Kruse v. Village of Chagrin Falls, Ohio, 74 F.3d 694, 697 (6th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 71, 136 L.Ed.2d 31 (1996).
 
 1. Discretionary Function Exception
 
 12
 Under the SIAA, the United States of America waives sovereign immunity for the actions of its employees where a private individual would be subject to liability under maritime law for the same conduct. See 46 U.S.C. § 742. Title 46 U.S.C. § 742 allows for "any appropriate nonjury proceeding in personam" to be brought against the United States of America "[i]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained." However, this limited waiver is not absolute. This court has held that a discretionary function exception similar to that provided in the FTCA, 28 U.S.C. § 2680(a), implicitly applies to the SIAA. See Graves v. United States, 872 F.2d 133, 137 (6th Cir.1989) (citing Chotin Transp., Inc. v. United States, 819 F.2d 1342, 1347 (6th Cir.) (en banc), cert. denied, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 371 (1987)). Under the discretionary function exception, sovereign immunity is retained where "the alleged negligence consists in flaws in the government's performance of a discretionary function or duty."[10] Graves, 872 F.2d at 137. Whether the alleged negligent conduct falls within the discretionary function exception is a question of subject matter jurisdiction. See In re Ohio River Disaster Litig., 862 F.2d 1237, 1244 (6th Cir.1988), cert. denied sub nom. Walker Towing Corp. v. United States, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 27 (1989). If the discretionary function exception applies, a dismissal for lack of federal subject matter jurisdiction is appropriate. See Rich, 119 F.3d at 449.
 
 
 13
 In the instant case, Ohio Edison points to the Coast Guard employees' negligence in carrying out three mandatory duties created by Coast Guard internal standard operating procedures (these particular procedures hereinafter referred to as the "SOPs"): (1) every Class I aid to navigation is required to be inspected annually by the assigned Coast Guard unit in order to ensure compliance (J.A. at 1335, 1348, 1392, 1470) (Ex. 6); (2) a discrepancy in a private aid shall be reported to the assigned primary unit within four hours of discovery, and primary units are to notify immediately the private aid owner of the discrepancy and contact the owner at least once a week thereafter until the discrepancy is corrected[11] (J.A. at 1469, 1336, 1339, 1373, 1375) (Ex. 6); and (3) primary units are required to issue a Broadcast Notice to Mariners immediately upon receipt of a navigational aid discrepancy report (J.A. at 1336, 1372, 1407) (Ex. 6) and to publish at least weekly a Local Notice[12] to Mariners including reference to all reported aid discrepancies (J.A. at 1336, 1134-35, 1142) (Exs.4, 6). Appellant's Br. at 12-14. The United States, on the other hand, maintains that because standard operating procedures are not equivalent to regulations and statutory directives, the SOPs that Ohio Edison contends have been violated do not as an initial matter constitute mandatory federal policies creating mandatory duties. Assuming this were true, the discretionary function exception would be applicable, and sovereign immunity would bar suit against the United States. Appellees' Br. at 14.
 
 
 14
 However, since we ultimately conclude below that Ohio Edison has not shown that the United States can be held liable under maritime tort law, we need not address the discretionary function issue to resolve this appeal.
 
 2. Liability under Maritime Tort Law
 
 15
 Like the FTCA, the SIAA does not create a cause of action against the United States of America. See Myers v. United States, 17 F.3d 890, 894 (6th Cir.1994) [hereinafter Myers ]. Thus, even assuming the discretionary function exception is not applicable as Ohio Edison contends, Ohio Edison must still show that a private entity would be liable under maritime tort law for the same conduct.[13] See 46 U.S.C. § 742 (waiving sovereign immunity "[i]n cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained").
 
 
 16
 a. Good Samaritan Liability
 
 
 17
 Ohio Edison argues that maritime tort liability exists by virtue of the Good Samaritan Doctrine, "which makes one person liable to another for breach of a duty voluntarily assumed by affirmative conduct, even when that assumption of duty is gratuitous." Patentas, 687 F.2d at 713-14 (citing Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955)). The RESTATEMENT (SECOND) OF TORTS[14] provides a more detailed statement of this rule:
 
 
 18
 § 323. Negligent Performance of Undertaking to Render Services
 
 
 19
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 
 
 20
 (a) his failure to exercise such care increases the risk of such harm, or
 
 
 21
 (b) the harm is suffered because of the other's reliance upon the undertaking.
 
 
 22
 § 324A. Liability to Third Person for Negligent Performance of Undertaking
 
 
 23
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 24
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 25
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 26
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 27
 RESTATEMENT (SECOND) OF TORTS §§ 323, 324A (1965). Maritime tort law has been held to recognize the good samaritan theory of liability. See Patentas, 687 F.2d at 714.
 
 
 28
 The threshold issue is typically whether the Coast Guard undertook to render services with respect to the Aid to the plaintiffs or for the benefit of plaintiffs. See Myers, 17 F.3d at 902. Ohio Edison must then show that the Coast Guard was negligent in carrying out that undertaking. See id. While the United States maintains that the responsibility for establishing, operating, and maintaining privately-owned aids to navigation lies not with the Coast Guard but with the private owner as illustrated by 33 C.F.R. §§ 66.01-3, 66.01-20,[15] the record is unclear as to whether the Coast Guard has undertaken to perform annual inspections of the Aid and to disseminate accurate and complete discrepancy information regarding this Aid through its Broadcast and Local Notices. For purposes of this opinion, however, we will assume arguendo that Ohio Edison has satisfied these first two elements in order to focus our discussion on the third element required for establishing Good Samaritan liability--proximate cause.
 
 
 29
 Proximate cause can be demonstrated through a variety of ways. Ohio Edison asserts that proximate cause exists here both because the United States' undertaking resulted in an increased risk of harm to plaintiffs and because plaintiffs detrimentally relied on the undertaking. Appellant's Br. at 29. Ohio Edison's first argument is that by disseminating inaccurate or incomplete information, the United States increased the risk of harm to plaintiffs. Appellant's Br. at 30. This, however, is incorrect. In order to rely on this basis, Ohio Edison must show that the Coast Guard through affirmative actions caused " 'some physical change to the environment or some other material alteration of circumstances.' " Patentas, 687 F.2d at 717 (quoting the RESTATEMENT OF TORTS § 324A cmt. c., illus. 1); see also Myers, 17 F.3d at 903. Thus, "[t]he test is not whether the risk was increased over what it would have been if the defendant had not been negligent," but rather whether "the risk [wa]s increased over what it would have been had the defendant not engaged in the undertaking at all." Myers, 17 F.3d at 903. The risk or hazard in this case was the unilluminated concrete/steel pier. Although the Coast Guard did nothing to diminish the risk posed by this hazard, it likewise did nothing to increase the risk that this hazard posed. In this respect, the situation presented by the instant case is no different from that in Myers where Mine Safety and Health Administration inspectors failed to detect and to protect miners from an explosion caused by a concentration of methane gas in the mines.
 
 
 30
 Moreover, Ohio Edison is unable to show plaintiffs' actual, detrimental reliance on the inaccurate/incomplete information disseminated by the United States. Appellant's Br. at 29. In order to prevail on this basis, Ohio Edison must show that plaintiffs themselves actually and detrimentally relied on the Coast Guard's dissemination of discrepancy information. In other words, plaintiffs must have been induced " 'to forgo other remedies or precautions against the risk.' " Myers, 17 F.3d at 903 (quoting the RESTATEMENT OF TORTS § 324A cmt. e. (1965)). Ohio Edison points to the testimonies of Anderson and Chaykosky to support this reliance theory.[16] Yet, while Chaykosky testified that "sometime in [his] past, [he] had a chance to consult a chart of [the] area [where the accident occurred]" and that he "knew the towers were [supposed to be] lit" and was "relying on what [he] knew about those towers to be lit to get [him] home," this does not necessarily show that he relied on the Coast Guard's dissemination of discrepancy information in navigating his boat. J.A. at 1732 (Chaykosky Dep. at 197). In fact, there is no evidence that Chaykosky was even aware of the existence of such Notices to Mariners. The chart provided the location of the Aid, but a mariner would have had to listen to the Broadcast Notices or read the Local Notices to know whether or not the Aid was actually illuminated at any given time. Anderson's testimony that mariners generally rely on the Coast Guard's dissemination of information is a good starting point but does not address whether this particular accident involved detrimental reliance on incomplete Notice warnings. See Raymer v. United States, 660 F.2d 1136, 1143 (6th Cir.1981), cert. denied, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). While some evidence not previously before the district court does suggest that Chaykosky relied on his knowledge of the Aid's existence and his false assumption that it would be illuminated, there is no assertion and no evidence that Chaykosky's false assumption stemmed from his reliance on an incomplete/inaccurate Local Notice and that this reliance induced him to place undue faith in the accuracy of the charts he consulted.[17]
 
 
 31
 b. Delegation of Duty to Ohio Edison
 
 
 32
 Ohio Edison also takes issue with the district court's alternative basis for granting the United States' motion to dismiss and/or for summary judgment: the district court's conclusion that even if the discretionary function exception did not apply and the United States would be subject to maritime tort liability pursuant to the Good Samaritan Doctrine, any duty to inspect was delegated to Ohio Edison under the applicable statutes, federal regulations, Coast Guard standard operating procedures, and the permit application signed by Ohio Edison. J.A. at 180 (Op. at 10). Yet, our conclusion above that Ohio Edison has failed to show proximate cause, thereby depriving the federal courts of subject matter jurisdiction under the SIAA, makes it unnecessary for us to reach this issue.
 
 C. Rule 56(f)
 Request For Additional Discovery[18]
 
 33
 Under FED.R.CIV.P. 56(f), "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." The district court's decision not to permit Ohio Edison additional discovery before ruling on the motion to dismiss and/or for summary judgment is reviewed by this court for abuse of discretion. See Bush v. Rauch, 38 F.3d 842, 849 (6th Cir.1994).
 
 
 34
 In the instant case, Ohio Edison complied with all of the procedural requirements of Rule 56(f), in particular by filing an affidavit stating that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." See Plott v. General Motors Corp., 71 F.3d 1190, 1196 (6th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996); J.A. at 533 (Supplemental Aff. of Carr). Moreover, in his affidavit, counsel for Ohio Edison specified what additional discovery was still needed: (1) Class I files maintained by the Coast Guard, and (2) the deposition of Chaykosky. J.A. at 531 (Supplemental Aff. of Carr); cf. Schaffer v. A.O. Smith Harvestore Prods., Inc., 74 F.3d 722, 732 (6th Cir.1996) (suggesting that a failure to state such information renders a Rule 56(f) affidavit insufficient to justify postponing the ruling).
 
 
 35
 Yet, even assuming the district court erred in denying Ohio Edison's Rule 56(f) motion, a review of the substance of this affidavit and the additional discovery that was requested shows that any such error was harmless. This court requires " '[a] party invoking [Rule 56(f) ] protections [to] do so in good faith by affirmatively demonstrating ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact' " See Emmons v. McLaughlin, 874 F.2d 351, 356 (6th Cir.1989) (quoting Willmar Poultry Co. v. Morton-Norwich Prods., Inc., 520 F.2d 289, 297 (8th Cir.1975), cert. denied, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)). According to affiant, the Class I files and Chaykosky's deposition would support the theories of increased risk of harm and reliance which are related to the Good Samaritan Doctrine. J.A. at 533 (Supplemental Aff. of Carr). However, Ohio Edison does not mention the Class I files in discussing this issue in its brief on appeal and does not explain how such files would show increased risk of harm in a manner not inconsistent with our discussion above. As the previous discussion also indicates, Chaykosky's subsequent deposition does not aid Ohio Edison in showing detrimental reliance. Ohio Edison has also suggested in its brief to this court that the Coast Guard maintained exclusive knowledge as to whether and under what circumstances its employees weighed considerations of political, social, and economic policies in determining not to inspect an aid or not to notify a private owner of a discrepancy. Appellant's Br. at 41. Yet, this relates only to the discretionary function exception issue, which we have already explained is irrelevant to our disposition of this case.
 
 D. Rule 60(b)(2)
 
 36
 Relief from Judgment Based on Newly Discovered Evidence
 
 
 37
 A district court's decision not to relieve a party from a prior final judgment based on newly discovered evidence pursuant to Rule 60(b)(2) is similarly reviewed on appeal for abuse of discretion. See Amernational Indus., 925 F.2d at 975. This court will find an abuse of discretion only where there is a " 'definite and firm conviction that the trial court committed a clear error of judgment.' " Davis v. Jellico Comm. Hosp. Inc., 912 F.2d 129, 133 (6th Cir.1990) (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)). Furthermore, in reviewing a district court's denial of a Rule 60(b)(2) motion, we will not consider the merits of the underlying judgment. See Windsor v. United States Dep't of Justice, 740 F.2d 6, 7 (6th Cir.1984).
 
 
 38
 In order to prevail on a Rule 60(b)(2) motion, a "movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.' " New Hampshire Ins. Co. v. Martech U.S.A., Inc., 993 F.2d 1195, 1200-01 (5th Cir.1993) (footnote and citation omitted). In other words, the evidence cannot be merely impeaching or cumulative. See Yachts Am., Inc. v. United States, 779 F.2d 656, 662 (Fed.Cir.1985), cert. denied sub nom. Wilson v. United States, 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986).
 
 
 39
 In the instant case, the newly discovered evidence Ohio Edison urged the district court to consider consisted of the depositions of Chaykosky and Anderson. J.A. at 644-63 (Appellant's Mem. in Supp. of its Rule 60(b) Mot.). Ohio Edison's primary claim on appeal[19] is that Anderson's testimony would have created a genuine issue of material fact regarding the second prong of the discretionary function exception (whether the conduct in question is grounded in social, economic, and political policy). Appellant's Br. at 42; J.A. at 1832, 1843-44 (Anderson Dep. at 86, 97-98). While the United States provides no evidence suggesting that Ohio Edison did not use due diligence in pursuing these depositions before the entry of judgment, it seems clear that Anderson's testimony would not have led to a different ruling on the United States' motion to dismiss and/or for summary judgment. In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court established that in determining whether the second prong of the discretionary function test is satisfied, the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion ..., but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 324 (emphasis added). That Anderson's testimony would not have been relevant to the policy inquiry suggests that the district court's decision not to grant the extraordinary relief of Rule 60(b)(2) cannot be considered an abuse of discretion. See Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., 909 F.2d 1437, 1440 (10th Cir.1990) (noting that such relief is "extraordinary" only to be granted in "exceptional circumstances").
 
 
 40
 Furthermore, even assuming the discretionary function exception does not apply to the instant action, Ohio Edison's failure to show reliance nevertheless deprives the federal courts of subject matter jurisdiction over Ohio Edison's claim for contribution. Since the newly discovered evidence would not have clearly produced a different result if presented before the original judgment, we conclude that the district court did not abuse its discretion in declining to alter its prior judgment dismissing the action.
 
 III. CONCLUSION
 
 41
 For the foregoing reasons, the district court's dismissal for lack of federal subject matter jurisdiction and its denial of Ohio Edison's motion for relief from that judgment in light of newly discovered evidence are AFFIRMED. Since all claims forming a basis for federal jurisdiction are hereby dismissed, this case will be remanded to the district court with instructions to remand to the Erie County Court of Common Pleas in accordance with the district court's decision not to exercise jurisdiction over the remaining claims.
 
 
 
 *
 The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This light was classified as a Class I navigational aid--a navigational aid on marine structures which the owners are legally obligated to establish, maintain, and operate. See 33 C.F.R. § 66.01-15
 
 
 [2]
 Case Nos. 3:96CV7040, -41, -42, -43
 
 
 [3]
 On February 24, 1997, plaintiffs amended their complaint to assert claims against the United States. J.A. at 689 (First Amended Compl.)
 
 
 [4]
 No. 96-4057
 
 
 [5]
 Since an appeal of the dismissal was already pending in this court when Ohio Edison made the Rule 60(b)(2) motion, Ohio Edison was required to follow the procedure outlined in First Nat'l Bank of Salem, Ohio v. Hirsch, 535 F.2d 343, 346 (6th Cir.1976). Ohio Edison requested the district court to indicate whether it was inclined to consider altering the judgment in light of newly discovered evidence; if the district court had answered in the affirmative, Ohio Edison would then have had to request that this court remand the case to the district court
 
 
 [6]
 No. 97-3226
 
 
 [7]
 Maritime jurisdiction exists if two conditions are satisfied: location and connection with maritime activity. See Chapman v. City of Grosse Pointe Farms, 385 F.2d 962, 966 (6th Cir.1967); White v. United States, 53 F.3d 43, 45 (4th Cir.1995). The location test is satisfied if the tort occurs on navigable waters. See White, 53 F.3d at 45. A connection with maritime activity exists if the incident giving rise to the appeal has the potential to disrupt maritime commerce and has a substantial relationship to traditional maritime activity. See id. at 45-46. The Supreme Court has concluded that the navigation of noncommercial vessels within navigable waters satisfies the second part of the connection test. See id. at 48 (citing Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982))
 
 
 [8]
 Title 46 U.S.C.App. § 741 refers to "corporation[s] in which the United States [of America] or its representatives ... own the entire outstanding capital stock." This has no relevance to the instant case
 
 
 [9]
 We further note that review of the district court's denial of Ohio Edison's Rule 60(b) Motion for Relief/Rule 59(e) Motion to Amend the Judgment is merged with this court's review of the district court's dismissal for lack of subject matter jurisdiction. See Perez v. Aetna Life Ins. Co., 96 F.3d 813, 819 (6th Cir.1996) (concluding that separate review is not necessary when the party is also appealing from the underlying grant of summary judgment), judgment vacated on other grounds by 106 F.3d 146 (6th Cir.1997); see also Columbia Gas Transmission Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir.1991) (explaining that while the court of appeals normally reviews a denial of a Rule 59(e) motion for abuse of discretion, the standard of review is de novo when the motion seeks reconsideration of a grant of summary judgment); J.A. at 193 (Notice of Appeal)
 
 
 [10]
 The discretionary function exception under the FTCA states that the government is not liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a)
 
 
 [11]
 Ohio Edison itself states that under the SOPs, primary units may restore Class I private aids which remain discrepant for longer than twenty-four hours. It is clear that this action is discretionary. Appellant's Br. at 13
 
 
 [12]
 These Local Notices to Mariners supplement and update the seven-volume Light List which is published and which describes the geographical position and lighting characteristics of the federal and private aids to navigation in each region. The Light List provides mariners with more details than what can be found on charts. J.A. at 1124 (Ex. 4)
 
 
 [13]
 The Third Circuit provides the following background: "The SIAA is the exclusive remedy against the United States for maritime torts. 28 U.S.C. § 2680(d) (1976). In contrast to the [FTCA], the SIAA does not incorporate state tort law, inasmuch as maritime tort law is federal law." Patentas v. United States, 687 F.2d 707, 713 (3d Cir.1982) (certain internal citations omitted)
 
 
 [14]
 While the Restatement contains several slightly different versions, § 323 is the most relevant in light of the particular facts of this case. Both parties on appeal assume that this is the relevant provision for analysis, and we agree. Appellant's Br. at 26; Appellees' Br. at 21
 
 
 [15]
 These regulations state that "the District Commanders [have] ... the authority to grant permission to establish and maintain, discontinue, change or transfer ownership of private aids to maritime navigation, and otherwise administer the requirements of this subpart," 33 C.F.R. § 66.01-3, and that "[a]ll classes of private aids to navigation shall be maintained in proper operating condition [and] are subject to inspection by the Coast Guard at any time and without prior notice." 33 C.F.R. § 66.01-20
 
 
 [16]
 In general, an appellate court reviewing a grant of summary judgment cannot consider evidence that was not before the district court at the time of its ruling. See Niecko v. Emro Mktg. Co., 973 F.2d 1296, 1303 (6th Cir.1992). However, we review these depositions for the sake of thoroughness since even after considering such additional evidence, we ultimately hold that Ohio Edison fails to show detrimental reliance
 
 
 [17]
 On appeal, Ohio Edison does not make a reliance argument based on the annual inspections. However, we note that Ohio Edison has set forth absolutely no evidence suggesting that Chaykosky knew the Coast Guard performed annual inspections on the Aid and relied on such a factor to his detriment. Even if such evidence existed, there is the argument that since the statutory scheme providing for the system of navigational aids places general responsibility for the maintenance and operation of the Aid in the hands of its private owner instead of the Coast Guard, see 33 C.F.R. § 66.01-15, any reliance on the government's annual inspection would not have been reasonable. See Myers, 17 F.3d at 904; cf. Indian Towing, 350 U.S. at 69, 76 S.Ct. 122 (determining that reliance clearly existed where a government operated lighthouse was not kept in good working order)
 
 
 [18]
 On March 25, 1996, the district court granted Ohio Edison's first Rule 56(f) motion to allow for additional discovery to take place. J.A. at 226. Ohio Edison made a second motion a few months later
 
 
 [19]
 This is also the only claim specified by Ohio Edison in its brief. However, we note that the district court also did not err in failing to consider Chaykosky's testimony because as we concluded above, his deposition would not have produced a different result with respect to the motion to dismiss and/or for summary judgment