**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0152n.06
Filed: December 9, 2004

**Nos. 03-1715, 04-1068**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| DRG, INC., | ) |
| | ) |
| **Plaintiff-Appellant,** | ) |
| | ) **ON APPEAL FROM THE** |
| v. | ) **UNITED STATES DISTRICT** |
| | ) **COURT FOR THE WESTERN** |
| TALENT TREE, INC., | ) **DISTRICT OF MICHIGAN** |
| | ) |
| **Defendant-Appellee**. | ) |

**BEFORE: KEITH, CLAY, and BRIGHT,\* Circuit Judges**

     **DAMON J. KEITH, Circuit Judge.** In this action involving an alleged breach of a franchise agreement, Plaintiff appeals the district court's decision granting summary judgment on all issues for Defendant. Plaintiff also appeals the district court's denial of its motion for relief from judgment based on newly discovered evidence under Federal Rule of Civil Procedure 60(b)(2). For the reasons explained below, we **AFFIRM** both of the district court's decisions.

**I.**

     On May 9, 2002, Plaintiff, DRG, Inc., d/b/a Talent Tree of West Michigan ("DRG"), filed suit in Michigan state court against Defendant, Talent Tree, Inc., f/k/a ISS Staffing Services, Inc. f/k/a Initial Staffing Services, Inc. ("Talent Tree"), for breach of their franchise agreement. Under the franchise agreement, DRG was entitled to replace any less favorable terms of the agreement with

---

     \* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

more favorable terms if offered to new or renewing franchisees. DRG claimed that Talent Tree

executed agreements containing more favorable terms with four of its existing franchisees but would

not allow DRG to revise its agreement. DRG sought declaratory judgment and injunctive relief that

would require Talent Tree to (1) provide DRG notice of any past and/or future agreements with new,

existing, or renewing franchisees that have more favorable terms, (2) disclose any past, present,

and/or future agreements with new, existing, or renewing franchisees that have more favorable

terms, and (3) give DRG the opportunity to replace its current agreement with one that was offered

to new, existing, or renewing franchisees and has more favorable terms.

Talent Tree removed the case to the United States District Court for the Western District of

Michigan. Talent Tree then moved for judgment on the pleadings, which the district court denied.

Subsequently, both DRG and Talent Tree moved for partial summary judgment, specifically related

to the third claim. After hearing oral argument, the district court concluded that the disputed terms

were unambiguous[1] and, under the agreement, DRG was not entitled to any relief. J.A. at 63. The

district court issued its opinion on May 2, 2003, in which it ostensibly determined that granting

partial summary judgment on the third claim would be dispositive of the case; thus, it granted full

---

[1] The disputed contract language is the phrase "offers to a new or renewing franchisees" in the following sentence:

> If, during the term of the Agreement, [Talent Tree] develops and *offers to new or renewing franchisees* a new form of franchise agreement which contains terms that are more favorable to a franchisee than the terms contained in the Agreement, [DRG] may elect to replace the Agreement with the new form of franchise agreement for the balance of the term of the Agreement.

J.A. at 58. The district court found that a Termination Agreement between Talent Tree and *existing* franchisees did not fall under the plain language of the contract.

summary judgment in favor of Talent Tree. On May 29, 2003, DRG filed a motion for reconsideration, which the district court denied. DRG timely filed an appeal.

On November 17, 2003, DRG filed a motion for relief from judgment in the district court, alleging that it had discovered new evidence. Without opinion, the district court denied DRG's motion. DRG timely filed another appeal. These two appeals have been consolidated for our review.

## II.

On appeal, we conduct a de novo review of a district court's decision granting summary judgment. *Elwell v. Univ. Hospitals Home Care Servs.*, 276 F.3d 832, 837 (6th Cir. 2002). We must view facts and any inferences from those facts in a light most favorable to the non-moving party. *Id.* Summary judgment will only be proper when there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). In a case where the district court enters summary judgment *sua sponte*, we not only ensure that the decision "meet[s] the normal standards for summary judgment," *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995), but we must also "determine if the court abused its discretion by entering the judgment on its own motion," *id.* A district court may, *sua sponte*, enter summary judgment "so long as the losing party *was on notice that she had to come forward with all of her evidence.*" *Id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 326 (1986)).

Having had the benefit of oral argument, and having carefully conducted a de novo review of the record, we are not persuaded that the district court erred in granting full summary judgment for Talent Tree. In this case, DRG's motion for partial summary judgment required the district court

to resolve a dispute regarding the language of the franchise agreement—specifically what constitutes a "new or renewing franchisee." The disputed language was a key issue litigated throughout discovery. DRG was on notice and, in fact, all three of the memoranda that it filed in conjunction with summary judgment motions related to this disputed language. When the district court found that there was no breach under the plain language of the agreement, it correctly disposed of the first two claims based on this finding. We conclude that the district court did not abuse its discretion in granting full summary judgment to Talent Tree.

Because the district court articulated the reasons for summary judgment, we find that the issuance of a full written opinion by this court would be duplicative. Accordingly, we adopt the reasoning of the district court in its Opinion dated May 2, 2003, and affirm the district court's grant of summary judgment for Talent Tree.

**III.**

With respect to the district court's denial of DRG's motion for relief from judgment, we review the district court's decision for an abuse of discretion. *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998). An abuse of discretion is found only if "there is a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal quotation marks and citations omitted). This court should not consider the merits of the underlying judgment. *Id.*

To prevail in its motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(2), DRG must meet two requirements. First, DRG must have exercised due diligence in obtaining the new evidence. *Good*, 149 F.3d at 423. Second, DRG must show that the new

evidence is "material and controlling and clearly would have produced a different result if presented before the original judgment." *Id.* (internal quotation marks and citations omitted).

In this case, DRG submitted several affidavits as evidence to show that the disputed contract language had a meaning different from that which the court concluded. Assuming arguendo that DRG could show that it exercised due diligence in obtaining this new information, DRG has not presented material and controlling evidence that would compel a different outcome. The district court concluded that the disputed contract terms were unambiguous, and therefore, under Texas law,[2] it was barred from considering extrinsic evidence. *See Mastin v. Mastin*, 70 S.W.3d 148, 152 (Tex. App. 2001) (finding that "[a]n ambiguity does not arise simply because the parties advance conflicting interpretations of the contract" and that a party may not introduce extrinsic evidence to create ambiguity when the contract is unambiguous). The affidavits submitted by DRG are, in fact, extrinsic evidence. Because the district court ascertained the meaning of the terms by the plain language of the contract, it may not consider additional evidence. Thus, such new evidence is not controlling and certainly would not have produced a different result. We are not convinced that the district court made a clear error of judgment and, therefore, affirm the district court's denial of DRG's motion for relief from judgment.

---

[2]   The contract at issue in this case contains a choice of law provision requiring Texas law to be used in resolving any disputes.

Nos. 03-1715, 04-1068
*DRG, Inc. v. Talent Tree, Inc.*
Page 6

BRIGHT, Circuit Judge, dissenting.

I cannot agree that the district court correctly interpreted the contracts at issue in this case, so I respectfully dissent.

The parties signed a franchise-renewal contract in 2000, stating that DRG, the first-renewing franchisee of Talent Tree, was entitled to adopt any terms included in any subsequent contracts between Talent Tree and any other "new or renewing" franchisee, if the terms were more beneficial to the franchisee than those in DRG's contract. Subsequently, Talent Tree entered into new contracts with four other existing franchisees whose franchises were soon to expire. These contracts provided that the franchises would continue beyond the expiration of the durations set in the original franchise contracts, and they contained terms that DRG preferred to certain terms in its own contract.

The new contracts with the other franchisees were a different form of agreement than DRG's 2000 agreement. The differences were, in part, as follows. DRG's 2000 franchise was for a duration of five years; the new durations of the other existing franchises were for approximately one year. (DRG wanted the shorter commitment.) DRG's 2000 contract provided a limited right of renewal at the end of the duration of the franchise; the new contracts provided no such right.[1] (Because DRG had soured on the relationship with Talent Tree, the loss of the right of renewal was

---

[1] Obviously, this clause would not prevent renewal of the franchise but would make renewal subject to the parties' discretion and mutual agreement. In fact, when these franchisees' terms expired, none sought to renew their franchises. Talent Tree then importuned each of them to sign on again. None did – an indication that DRG's preference for the terms given these other franchisees is a rational response to objective factors. The terms are "more beneficial," within the meaning of the 2000 contract, according to DRG.

unimportant to DRG, and probably desired.)  DRG's 2000 contract provided for one method of

revenue-sharing between franchisor and franchisee; the new contracts provided for a different

method.  (DRG preferred the method the other franchisees got.)  DRG's 2000 contract included a

non-competition clause, to take effect if the franchise expired at the end of the set duration; the new

contracts eliminated that clause.  (DRG intended to sever its relationship with Talent Tree, and

wanted out of the non-competition clause.)

When DRG thus invoked its right to the benefit of the better terms, Talent Tree refused.

Talent Tree said that the other existing franchisees were not "renewing franchisees."  The district

court agreed.  The majority adopts the district court's opinion.  I cannot.

The district court held that the word "renewal" (and thus, implicitly, the phrase "renewing

franchisee") in DRG's 2000 contract was defined by that contract's provision for franchise renewals.

The court may be incorrect.  The section of the agreement concerning "expiration, renewal, and

termination" defines neither "renewal" nor "renewing franchisee."  The section merely delineates

a limited right of automatic renewal – leaving renewal of the franchise on different terms subject to

the discretion and mutual agreement of the parties.[2]  No definition is to be found either in that

---

[2] Section 8(b) of DRG's 2000 contract reads as follows:

Renewal
After the initial 5-year term of the Agreement, FRANCHISEE will have the right to
renew the franchise an unlimited number of times, each time for a 5-year term.  To
exercise this right, FRANCHISEE must declare its intention to renew no later than
7 months prior to the expiration date of the Agreement and must execute for the
renewal period the then-current form of franchise agreement used by INITIAL [i.e.,
ISS Staffing Services, Inc. – the prior name of Talent Tree, Inc.] with appropriate
changes to reflect its status as a renewed franchise.  FRANCHISEE may elect to
have either all or none of the following provisions of the Agreement, as amended

section of the contract or in the "definitions" section.  "Renewal" and "renewing franchisee" are not

defined in the contract.

DRG's 2000 renewal clause gives DRG a right to a "renewal" of the franchise  at the end of

its five-year duration, under the form of agreement current at the time of the renewal.  The clause

contemplates, in fact, that there might be multiple "then-current" forms of agreement.  Additionally,

the 2000 renewal clause specifically contemplates that the form of agreement current at the time of

renewal might contain a different renewal clause than the 2000 contract contains – and gives DRG

the right to choose between its 2000 renewal clause and the then-current renewal clause.  See J.A.

119-20.  The renewal clause contemplates, therefore, that the terms of a franchise "renewal"

agreement might differ from the terms of DRG's 2000 agreement (and its renewal clause) – by, for

example, providing only a one-year franchise duration, by eliminating a right of renewal altogether,

or by providing for termination procedures at the end of a new term.  A new contract with an

existing franchisee under such a new form of agreement is, the renewal clause says, a renewal.

The district court held that "renewal" means only a new contract that conforms to the

conditions in the 2000 contract for DRG's limited right of renewal.  Because the 2000 renewal

clause provides only for additional five-year franchise durations, the court held, a new contract with

---

through the date of renewal, continued in the renewal franchise agreement, replacing
any contrary provisions that may be contained in the then-current form of franchise
agreement used by INITIAL:
. . .
8(b)(6) the renewal rules now contained in this subsection 8(b) . . . .

J.A. at 119-20.

an existing franchisee is not a "renewal" if it provides for an additional one-year franchise duration. Because the 2000 renewal clause provides for an unlimited number of renewals, the court held, a new contract with an existing franchisee is not a "renewal" if it provides for the termination of the franchise after a new term. This narrow definition of "renewal" is untenable. It is at war with the renewal clause itself, which specifically contemplates that a franchise "renewal" may be made under a different form of agreement – and thus may contain essential terms which are different – than DRG's 2000 contract.

The district court held that the new contracts with the other existing franchisees had the words "Termination Agreement"—not "Renewal Agreement"—printed at the tops of the documents, and each of the contracts included language that "FRANCHISEE does not desire to renew the Franchise Agreement, but does seek time to transition out as a franchisee." The court held that this language was definitive because DRG's 2000 renewal clause provided that a renewal agreement would contain "appropriate changes to reflect its status as a renewed franchise." The "appropriate changes" language cannot reasonably be read as requiring that a renewal contract be titled "renewal agreement." It requires only that the contract be written for an existing franchise which is being renewed, rather than for a new franchise which has not previously existed. The "appropriate changes" language merely anticipates that the former case may involve some considerations different than those implicated by the latter case, and that necessary changes will not violate the requirement to execute the "then-current form of agreement." It cannot mean that everything hinges on whether Talent Tree calls the contract a "renewal agreement" or not.

The district court characterized the new agreements with existing franchisees as "extending" rather than "renewing" those franchises. The choice of words is irrelevant, for they can be interchangeable. The renewal clause makes clear that the thing renewed is not the precise form of agreement of DRG's 2000 contract, but the franchise itself – under different terms in a different form of agreement. This result seems plain from the provisions of the clause as well as the explicit reference to renewal of the "franchise," not the agreement.

As to the other franchisees, whose later agreements contained terms DRG preferred to the terms of its own contract, their existing franchises were set to expire. The franchises did not expire, because a new contract, under a new form of agreement, provided for an additional duration. That would seem to be a renewal of the franchise. It might also be called an extension or prolongation or continuation or rebirth. Many words may be apt. One of them is "renewal." A franchisee renewing a franchise under a new form of agreement is a "renewing franchisee."

Because the district court's interpretation is at odds with the renewal clause itself, I would hold that the critical phrase "renewing franchisees" is ambiguous, as appellant argues, and should be determined after considering extrinsic evidence of the parties' meaning. I would reverse the grant of summary judgment.