**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GAEDEKE HOLDINGS VII LTD;
GAEDEKE OIL & GAS OPERATING,
LLC,

      Plaintiffs - Appellants/Cross-
      Appellees,

v.

TODD BAKER, John Does 9 through 10;
LANDON SPEED,

      Defendants - Appellees/Cross-
      Appellants,

and

BAKER PETROLEUM AND
INVESTMENTS, INC.; DAVID MILLS,

      Defendants - Appellees,

and

WINDSOR ENERGY GROUP, LLC,

      Defendant.

Nos. 16-6004 & 16-6017
(D.C. No. 5:11-CV-00649-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After a jury verdict, any party may move for a new trial under Federal Rule of Civil Procedure 59(a). If the district court orders a new trial, it necessarily vacates the jury's verdict and its judgment. To reinstate a verdict and judgment, a party that opposes the new trial must appeal after the new trial and convince us that the district court erred in ordering a new trial. The case before us presents an unusual twist to this general situation—here it is the party that moved for a new trial now seeking to avoid the new trial's less favorable result. It seeks to enforce its first judgment (while reinstating damages the jury awarded for its unjust-enrichment claim). We hold that it is stuck with the second judgment.

I

In its Complaint, Gaedeke Holdings VII, LTD and Gaedeke Oil & Gas Operating, LLC (collectively Gaedeke) sued Landon Speed, Todd Baker, and Baker Petroleum and Investments, Inc. (collectively Defendants), alleging that they had used Gaedeke's confidential geological study to profit on oil-and-gas leases.[1] At trial, Gaedeke asserted six claims against Defendants: (1) violation of the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78, § 85 (2009); (2) violation of the Lanham Act, 15 U.S.C. § 1125(a)[2]; (3) misappropriation and conversion; (4) civil

---

[1] Gaedeke's Third Amended Complaint also asserts claims against David Mills, Jim Ashford, Mayhem Oil and Gas, Inc., Windsor Energy Group, LLC, and Everest Operations Management, LLC. In its opening brief, Gaedeke seeks relief against only Todd Baker, Baker Petroleum, and Landon Speed.

[2] Gaedeke asserted a reverse-passing-off claim. "The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp.*

conspiracy; (5) tortious interference; and (6) unjust enrichment, constructive trust, and accounting. The jury found in Gaedeke's favor except on its claim for tortious interference with contract. On a special-verdict form, the jury awarded Gaedeke $3,400,000 for unjust enrichment, $1,000,000 for misappropriation of trade secrets, $1,000,000 for conversion, $1,500,000 for civil conspiracy, and $1,000,000 under the Lanham Act.

After the first trial, Defendants renewed their motion for judgment as a matter of law (after first making a motion at the close of Gaedeke's case in chief) seeking relief on three grounds.[3] First, Defendants argued that Gaedeke had lacked "standing to sue on behalf of the AMI Partnership" because the AMI Partnership, rather than Gaedeke, owned the trade secret.[4] Appellees' Supp. App. Vol. 1 at 210–13. From this, Defendants argued that Gaedeke could not be the real party in interest under Federal Rule of Civil Procedure 17. Second, Defendants argued that Gaedeke's unjust-enrichment claim needed to be dismissed because Gaedeke had an adequate remedy at law. Defendants cited Oklahoma law providing that a district court "will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment"

_____

*v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). Reverse passing off occurs when someone misrepresents owning goods or services belonging to another. *Id.* at 27 n.1.

[3] Defendants moved for judgment as a matter of law both after Gaedeke rested and after Defendants presented their case. They renewed their motion for judgment as a matter of law after the jury's verdict.

[4] Gaedeke is a partner of AMI Partnership. Defendants argued that before the misappropriations, Gaedeke transferred the trade secret to the AMI Partnership and Gaedeke sought damages on behalf of the AMI partners.

3

where "a plaintiff has an adequate remedy at law." *Id.* at 223. Defendants argued that the Oklahoma Uniform Trade Secrets Act provided an adequate remedy at law, defeating Gaedeke's ability to pursue an equitable unjust-enrichment claim. Third, Defendants argued that the Oklahoma Uniform Trade Secrets Act had displaced Gaedeke's common-law claims for conspiracy, conversion, and unjust enrichment. Indeed, the Oklahoma Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Okla. Stat. tit. 78, § 92(A). Defendants argued that this statute required the district court to dismiss Gaedeke's three common-law claims.

In resolving Defendants' motion, the district court agreed with Gaedeke that it was the real party in interest and had authority to bring the claims. But the district court agreed with Defendants that Gaedeke's common-law claims were unavailable because "the Uniform Trade Secrets Act bars common law claims . . . that are based entirely on factual allegations of misappropriation of trade secrets." Appellant's App. at 202. The district court concluded that Gaedeke could not pursue its conspiracy and conversion claims, because those claims depended on the same facts alleged to support the claim for misappropriation of trade secrets. Finally, the district court agreed with Defendants that Gaedeke could not pursue its equitable unjust-enrichment claim, because "where a plaintiff has an adequate remedy at law, a court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment." *Id.* at 200.

4

The same day, the district court entered a judgment awarding $1,000,000 to Gaedeke on its misappropriation-of-trade-secrets claim. After entry of this judgment, Gaedeke filed a motion under Federal Rule of Civil Procedure 59 to alter or amend the judgment to reinstate the jury's award of $3,400,000 on Gaedeke's unjust-enrichment claim, or alternatively, for a new trial on damages. Gaedeke argued that the Oklahoma Uniform Trade Secrets Act permits damages for unjust enrichment in addition to actual damages. Next, Gaedeke argued that Defendants had waived their argument that the Oklahoma Uniform Trade Secrets Act preempted their unjust-enrichment claim by not raising their argument as an affirmative defense. Finally, and alternatively, Gaedeke argued that absent the district court's "amend[ing] the judgment [to reinstate the jury's unjust-enrichment award], the Court should, in the interests of justice and fundamental fairness, grant a new trial as to damages." *Id.* at 240. On this point, Gaedeke argued that the district court had substantially prejudiced it during the first trial by striking its expert-witness testimony on damages.

Over Defendants' objections, the district court granted Gaedeke a new trial on damages. The district court agreed that it had prejudiced Gaedeke by striking Gaedeke's expert witnesses without allowing Gaedeke to respond. The district court stated "in light of this Order, the Court VACATES the Judgment . . . as to damages only." *Id.* at 389. In a footnote, the district court explained that "[t]he portion of the Judgment whereby the Court orders that judgment should be entered in favor of plaintiffs and against defendants . . . is not vacated." *Id.* n.3. After granting a new

5

trial on damages, the district court treated Gaedeke's motion to alter or amend the judgment as moot.

In the second trial, despite Gaedeke's presenting its previously excluded expert testimony, the jury awarded Gaedeke just $40,000 in damages. The district court entered a judgment for Gaedeke in that amount. Gaedeke appealed.

On appeal, Gaedeke doesn't argue that the district court erred in granting Gaedeke's motion for a new trial on damages. Nor does it argue that the district court erred in any way during the second trial. Instead, Gaedeke disregards the second jury's verdict, arguing that the district court erred by reducing the first jury's damages award to $1,000,000. Specifically, Gaedeke argues that "[t]he trial court erred when, after the first trial, it refused to render a judgment that awarded both forms of damages cumulatively recoverable for misappropriation of a trade secret under [the Oklahoma Uniform Trade Secrets Act]—unjust enrichment and actual damages." Appellant's Opening Br. at 7.[5]

In response, Defendants argue that because Gaedeke sought and received a new trial on damages, the second jury's verdict superseded the first jury's verdict. Defendants argue that Gaedeke cannot successfully move for a new trial on damages and then later demand the higher verdict and judgment from the first trial.

---

[5] On appeal, Gaedeke does not claim that the district court erred in dismissing its claims for unjust enrichment, conspiracy, conversion, or violation of the Lanham Act. Rather, Gaedeke claims the district court should have awarded the unjust-enrichment damages as part of the misappropriation-of-trade-secrets claim.

For their part, Defendants cross-appeal the district court's partial denial of their Rule 50 motion for judgment as a matter of law (made after the first trial). *See* Fed. R. Civ. P. 50. In particular, they argue that the district court erred by not granting their motion, because Gaedeke presented no evidence that it owned the trade secret. Defendants argue that ownership is an element of a claim for misappropriation of trade secrets and that Gaedeke failed to prove this element.

## II

We review de novo a district court's order granting or denying a motion for judgment as a matter of law, applying the same standard as applied in the district court. *Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206 (10th Cir. 2012). "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)).

### A

Before addressing the merits of Gaedeke's appeal, we must determine whether Gaedeke can appeal the district court's earlier Order granting Defendants' Rule 50 motion for judgment as a matter of law, which reduced Gaedeke's damages by the $3,400,000 the jury awarded for its unjust-enrichment claim. Defendants argue that when Gaedeke obtained a new trial, the new trial necessarily vacated the district court's earlier judgment on damages. We agree.

7

After the jury's verdict, Defendants renewed their motion for judgment as a matter of law under Rule 50(b). The district court partially granted Defendants' motion, dismissing Gaedeke's claims for unjust enrichment, conversion, and conspiracy. That same day, the district court entered judgment in favor of Gaedeke for $1,000,000.

Dissatisfied with that result, Gaedeke filed a motion under Rule 59 asking the district court to alter or amend its judgment to restore the jury's damage award on its unjust-enrichment claim, or, alternatively, to grant a new trial on damages. Over Defendants' objections, the district court granted Gaedeke's motion for new trial on damages under Rule 59(a).

In the second trial on damages, the district court allowed Gaedeke's expert witnesses to testify. Despite this testimony, the jury awarded Gaedeke a mere $40,000 in damages. Gaedeke has appealed, asking us in effect to disregard the second jury trial, to reinstate the jury's first damages award, to reverse the district court's order granting Defendants' Rule 50 motion, and to restore the damages for its unjust-enrichment claim by adding it to the first jury's damage award on their misappropriation-of-trade-secrets claim. We decline Gaedeke's invitation to do so.

By seeking a new trial under Rule 59(a) after the district court declined to alter or amend its judgment under Rule 59(e), Gaedeke chose to abandon the first jury's damages verdict. *See* Fed. R. Civ. P. 50(c)(2) advisory committee's note to 1963 amendment. Once the district court granted Gaedeke's motion for a new trial under

8

Rule 59(a)(1)(A), "the judgment is superseded."[6] *Id.*; *see United States v. Ayres*, 76 U.S. 608, 610 (1869) (Granting a new trial "has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place."); *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1294 (10th Cir. 2011) (explaining that an order withdrawing approval of a class-action settlement agreement is similar to an order granting a new trial because it vacates any earlier final decision); 12 Moore's Federal Practice § 59.19 (3d ed. 2016) ("When a court grants a Rule 59 new trial motion, the old judgment is of no effect and the new ruling supplants the old judgment."). Consistent with this background, we hold that once Gaedeke sought and received a new trial, this vacated the jury's verdict and the corresponding judgment, pending possible reinstatement on appeal.

Though opposing the new-trial motion in the district court, Defendants have not appealed the district court's order granting a new trial. Had they done so, and had we agreed that the district court erred in granting the new trial, we could have reinstated the district court's judgment. *See, e.g., Nat'l Farmers Union Auto. & Cas. Co. v. Wood*, 207 F.2d 659, 662 (10th Cir. 1953) ("[T]he two orders each purporting to grant a new trial are vacated; and the cause is remanded with directions to reinstate and reenter the original judgment."); *Wood v. Harrington*, 133 F.3d 933, at *1 (10th Cir. 1998) (unpublished) ("In that first appeal, we ordered the judgment from the second trial to be vacated because defendants' motion for a new trial had been

---

[6] In contrast, where a party moves for a conditional new trial under Rule 50(c)(2) depending on the outcome of the appeal, "the judgment will not be superseded." *Id.*

9

granted on an impermissible ground, and ordered the judgment from the first trial to be reinstated."); 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2818 (3d ed. 2016) ("On appeal from the final judgment following the second trial, the [party opposing the new trial] may claim error in the grant of the new trial. If the appellate court agrees, it will reinstate the verdict reached at the first trial."). But because Gaedeke itself asked the district court to grant a new trial on damages, it cannot now complain that it got its wish.[7] Thus, Gaedeke may not reinstate the district court's judgment from the first trial. Gaedeke has no legal basis to pick and choose jury verdicts.

## B

Appealing the district court's partial denial of their Rule 50 motion renewed after the first jury's verdict, Defendants argue that the district court should have dismissed Gaedeke's claim for misappropriation of trade secrets because Gaedeke presented no evidence that it owned the trade secret.

Defendants argue that Gaedeke transferred the trade secret to the AMI Partnership before Defendants misappropriated any trade secrets. The AMI Partnership comprises working-interest owners. Gaedeke is one of AMI's partners and sought damages on behalf of the AMI partners. Because the AMI Partnership

---

[7] Gaedeke doesn't dispute that the district court vacated its judgment. Instead, Gaedeke merely asserts that it did not receive the full relief it requested since it alternatively moved for a motion to alter or amend the district court's judgment. We agree that Gaedeke would be permitted to review the district court's order granting the new trial. But as we explained above, the district court didn't err in granting Gaedeke's motion for new trial and Gaedeke doesn't assert that it did. Gaedeke provides no grounds for us to reinstate the jury's verdict.

owned the trade secret, not Gaedeke, Defendants argue that Gaedeke failed to prove

its ownership of the trade secret—which Defendants say is an element of a claim for

misappropriation of trade secrets. In contrast, Gaedeke argues that it acquired the

right to possess and use the trade secret and retained that right even after it

transferred the trade secret. To resolve this dispute, we must determine whether

ownership is an element of a claim for misappropriation of trade secrets under

Oklahoma law.

"When the federal courts are called upon to interpret state law, the federal

court must look to the rulings of the highest state court." *Johnson v. Riddle*, 305 F.3d

1107, 1118 (10th Cir. 2002). If no decision by that court exists, then we must apply

"what [we] find to be the state law after giving 'proper regard' to relevant rulings of

other courts of the State." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070,

1077 (10th Cir. 2007) (quoting *Johnson*, 305 F.3d at 1119). "The decision of an

intermediate appellate state court 'is a datum for ascertaining state law which is not

to be disregarded by a federal court unless it is convinced by other persuasive data

that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v.

American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Like many other states, Oklahoma has adopted the Uniform Trade Secrets Act.

Okla. Stat. tit. 78, § 85. Nothing in Oklahoma's Act defines ownership of the trade

secret as an element of a claim for misappropriation of trade secrets. *Id.* tit. 78,

§ 88(A) (stating that a "complainant is entitled to recover damages for

misappropriation"). And no court reviewing Oklahoma law has included ownership

11

as an element of a claim for misappropriation of trade secrets. For example, in *MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010), the Oklahoma Court of Civil Appeals stated that "[t]o prove misappropriation of a trade secret, [a plaintiff] must show (i) the existence of a trade secret, (ii) misappropriation of the secret by defendants, and (iii) use of the secret to [the plaintiff's] detriment." *See also Musket Corp. v. Star Fuel of Oklahoma, LLC*, 606 F. App'x 439, 451 (10th Cir. 2015) (unpublished) (not including ownership as an element of a claim for misappropriation of trade secrets under Oklahoma law); *Pre-Paid Legal Servs., Inc. v. Cahill*, 171 F. Supp. 3d 1219, 1227 (E.D. Okla. 2016) (same); *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990) (same).

This position is consistent with other states that have adopted similar versions of the Uniform Trade Secrets Act. For instance, Maryland's Uniform Trade Secrets Act is nearly identical to Oklahoma's. *Compare* Md. Code Ann., Com. Law § 11-1201 (West 2017) *with* Okla. Stat. tit. 78, § 85. In *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 333 (4th Cir. 2001), the court, applying Maryland law, concluded that "fee simple ownership in its traditional sense is not an element of a trade secrets misappropriation claim in Maryland." The court explained that "the concept of a 'fee simple' interest in a trade secret, or any proprietary interest, is not entirely useful in defining the elements of a misappropriation claim." *Id.* at 332; *see also DaimlerChrysler Servs. v. Summit Nat'l*, No. 02-71871, 2006 WL 1420812, at *8 (E.D. Mich. May 22, 2006) ("The Court agrees with the holding in *DTM Research* that for purposes of trade secrets law, the focus is appropriately on the

12

knowledge, or possession, of the trade secret, rather than on mere 'ownership' in the traditional sense of the word."); *Parking Co., L.P. v. Rhode Island Airport Corp.*, No. Civ. A. P.B. 2004-4189, 2005 WL 419827, at *3 (R.I. Super. Ct. Feb. 18, 2005) ("Although the holder of a trade secret may be considered to have acquired a property right therein . . . the [Uniform Trade Secrets] Act does not require ownership. . . . [I]t is possession, not ownership or title, which is the relevant inquiry.").

Oklahoma adopted the Uniform Trade Secrets Act originally drafted by the National Conference of Commissioners. *See* Okla. Stat. tit. 78, § 85. The Uniform Act's commentary also suggests that its drafters did not intend to limit trade-secret claims to owners. For instance, the commentary states that "[w]here more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy." Uniform Trade Secrets Act § 2 cmt. (2005). This comment suggests that multiple parties could be entitled to trade-secret protection. If the drafters had intended to limit trade-secret protection to owners, they could have easily stated "where more than one owner is entitled to trade secret protection."

We acknowledge that Defendants have also provided authority from other states suggesting that ownership is a required element of a claim for misappropriation of trade secrets. *See, e.g.*, *Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 680 (D. Minn. 1986) ("[P]laintiff . . . must prove the following elements: (1) plaintiff is the owner of a trade secret . . . ."). But many of these cases are easily distinguishable.

13

For example, under Minnesota law, applied by the court in *Surgidev*, the statute defining a trade secret specifically refers to whether "the *owner* intends or expects the secrecy of the type of information comprising the trade secret to be maintained." Minn. Stat. Ann. § 325C.01 (West 2017) (emphasis added). Unlike Minnesota's statutory language, Oklahoma's statutory definition of trade secret makes no reference to the "owner" of the trade secret.

Every court applying Oklahoma law has omitted ownership as a required element. Faced with Oklahoma courts repeatedly omitting ownership as an element, the commentary to the Uniform Trade Secrets Act, and distinguishing language in other states' statutes, we see no basis to apply a new element for a claim for misappropriation of trade secrets under Oklahoma law. Thus, the district court did not err in partially denying Defendants' motion for judgment as a matter of law.

## III

For these reasons, the district court's judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge