RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JANE LUNA, as Administratrix of the Estate of Charles
Jason Toll,

       *Plaintiff-Appellant* (17-5608),
       *Plaintiff-Appellee* (17-5675),

  *v.*

RICKY J. BELL; GAELAN DOSS; JAMES HORTON,
       *Defendants-Appellees* (17-5608),
       *Defendants-Appellants* (17-5675).

Nos. 17-5608/5675

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00093—John T. Nixon, Todd J. Campbell,
and Aleta Arthur Trauger, District Judges.

Argued:  February 1, 2018

Decided and Filed:  April 5, 2018

Before:  MERRITT, MOORE, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:**  David J. Weissman, RAYBIN & WEISSMAN, P.C., Nashville, Tennessee, for Appellant in 17-5608 and Appellee in 17-5675.  Leslie Ann Bridges, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees in 17-5608 and Appellants in 17-5675.  **ON BRIEF:**  David J. Weissman, RAYBIN & WEISSMAN, P.C., Nashville, Tennessee, Jeff Roberts, JEFF ROBERTS & ASSOCIATES, PLLC, Nashville, Tennessee, for Appellant in 17-5608 and Appellee in 17-5675.  Leslie Ann Bridges, Steven A. Hart, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees in 17-5608 and Appellants in 17-5675.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Defendants Ricky J. Bell ("Bell"), Gaelan Doss ("Doss"), and James Horton ("Horton") (together, "Defendants") appeal the first district court's[1] order granting Plaintiff Jane Luna ("Luna"), as Administratrix of the Estate of Charles Jason Toll ("Toll"), deceased, relief under Federal Rule of Civil Procedure 60(b)(2); additionally, Defendants appeal the second district court's and the third district court's denials of Defendants' requests to reconsider the order granting Luna relief under Rule 60(b)(2).  Luna appeals the third district court's order granting summary judgment to Defendants.

For the reasons discussed below, we **AFFIRM** the first district court's order granting Luna relief under Rule 60(b)(2) from the judgments and from the order denying a new trial.  We also **AFFIRM** the orders denying Defendants' requests to reconsider.  Lastly, we **REVERSE** the third district court's order granting summary judgment to Defendants, and we **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

In August 2010, Toll was in solitary confinement at Riverbend Maximum Security Institution ("Institution"), when he allegedly threw liquid at a correctional officer.  R. 52 (Am. Compl. ¶¶ 3, 8, 19, 21) (Page ID #237, 238, 240).  Because of this incident, Horton, the shift commander, decided to extract Toll from his cell.  *Id.* ¶¶ 23, 32 (Page ID #240, 241).  Once the cell extraction team, which included Doss and Horton, removed Toll from his cell, Toll became unresponsive.  *Id.* ¶¶ 2, 32, 57 (Page ID #237, 241, 246).  An ambulance transported Toll to a hospital, where a doctor pronounced him dead.  *Id.* ¶ 65 (Page ID #247).

---

[1]Three district court judges oversaw this action.  District Judge Nixon was the original judge.  R. 31 (Order) (Page ID #107).  However, because Judge Nixon recused himself in 2015, District Judge Campbell took over.  R. 188 (Order) (Page ID #1472); R. 189 (Order) (Page ID #1473).  Then, in 2016, because of Judge Campbell's retirement, District Judge Trauger received the action.  R. 262 (Order) (Page ID #3572).  For clarity, we will refer to Judge Nixon's oversight as "the first district court," to Judge Campbell's oversight as "the second district court," and to Judge Trauger's oversight as "the third district court."

Because of Toll's death, Toll's mother, Luna, asserted two claims under 42 U.S.C. § 1983 against Defendants. R. 1 (Compl.) (Page ID #1). Luna sued Horton and Doss in their individual capacities for excessive force. R. 52 (Am. Compl. ¶¶ 2, 94–111) (Page ID #237, 251–54). She also asserted a failure-to-train claim against Bell, who is or was the warden, in his individual capacity. *Id.* ¶¶ 4, 112–23 (Page ID #237, 254–56).

In August 2013, the first district court held a jury trial regarding both claims. R. 157 (Verdict) (Page ID #994); R. 166 (Min. Entry) (Page ID #1010). At the end of this trial, the jury delivered a favorable verdict for Defendants on all counts. R. 157 (Verdict) (Page ID #994); R. 160 (Verdict) (Page ID #1000); R. 161 (Verdict) (Page ID #1002). In light of the jury's findings, the first district court entered judgments in favor of Defendants. R. 162 (J.) (Page ID #1004); R. 163 (J.) (Page ID #1005); R. 164 (J.) (Page ID #1006).

After the trial, Luna moved for a new trial under Federal Rule of Civil Procedure 59 on the grounds that the first district court omitted a jury instruction and included confusing language. R. 168 (Mot.) (Page ID #1012); R. 169 (Mem. at 13) (Page ID #1026). The first district court disagreed, so it denied Luna's motion. *See Luna (Luna I) v. Bell*, No. 3:11-CV-00093, 2013 WL 5592194, at *4 (M.D. Tenn. Oct. 10, 2013).

Then, in 2014, the New York Times published an article that discussed Luna's case. R. 175-3 (Mem. Ex. 3, Erica Goode, *When Cell Door Opens, Tough Tactics and Risk*, N.Y. Times (July 28, 2014), http://nyti.ms/1nUFcq6) (Page ID #1241). The reporter had discovered a letter that William Amonette ("Amonette"), who was part of the cell extraction team, had written to Bell (hereinafter, "the letter"). *Id.* at 11 (Page ID #1251). In this letter, dated February 7, 2011, Amonette resigned from his position at the Institution:

> After much thought and consideration, I have determined that it is necessary for me to resign my position with the Tennessee Department of Corrections. My reasons for this are two-fold.
>
> First, ever since I asked questions in your office about the witnesses in the Charles Toll case that were not spoken to by Internal Affairs, I have been treated poorly by your subordinates when I report to work.
>
> Secondly, I also discovered on February 2, 2011 that the records for my September 2, 2010 core training session were altered to reflect that I had eight (8) hours of training when I only received six (6) and I was told just to sign the

time sheet. This is falsification of training records, and I was ridiculed at the time for not wanting to accept eight (8) hours pay for (6) hours work. When I requested a slip to sign for two hours comp time, I was treated as if I was causing an inconvenience. Some guards advised me that they have done as little as four (4) hours training and were paid for eight (8) hours. With the extenuating allegations surrounding proper officer training, I felt it necessary to make you aware of the situation.

To put this simply, I cannot work somewhere where asking questions or trying to do what is right is punished. Please accept this letter as notification of my two week notice of separation.

R. 175-5 (Mem. Ex. 5) (Page ID #1254). Defendants had not produced this letter when responding to Luna's requests for production of documents. R. 175-2 (Mem. Ex. 2) (Page ID #1110–1240).

In view of this new evidence, Luna moved under Federal Rule of Civil Procedure 60(b)(2) for relief from the judgments and from the order denying a new trial. R. 174 (Mot.) (Page ID #1094). Luna also moved to reopen the case. R. 173 (Mot.) (Page ID #1092). In February 2015, the first district court granted both of these motions in an order. R. 185 (Order) (Page ID #1443). Then in April 2015, the first district court issued another order, providing supporting reasoning. R. 187 (Order) (Page ID #1463). Defendants have appealed both of these orders. R. 300 (Notice of Appeal) (Page ID #3836).

Luna also moved for sanctions because of Defendants' failure to produce the letter. R. 221 (Mot.) (Page ID #2808). The magistrate judge determined, however, that sanctions were not warranted because Defendants did not act with bad faith when they failed to produce the letter. *Luna (Luna II) v. Bell*, No. 3:11-CV-00093, 2016 WL 3688930, at *9 (M.D. Tenn. July 12, 2016). The second district court agreed that sanctions were not appropriate, even if Luna did have a right to a new trial. *Luna (Luna III) v. Bell*, No. 3-11-0093, 2016 WL 10719390, at *2 (M.D. Tenn. Aug. 18, 2016).

Additionally, Defendants moved for the second district court to reconsider the order granting the new trial. *See* R. 191 (Mot.) (Page ID #1475). However, the second district court denied Defendants' motion. R. 198 (Order) (Page ID #1514). When Defendants moved again for reconsideration, the third district court also denied Defendants' request. *Luna (Luna IV) v.*

*Bell*, No. 3-11-0093, 2017 WL 1425511, at *1 (M.D. Tenn. Apr. 20, 2017).  Defendants have appealed these two orders.  R. 300 (Notice of Appeal) (Page ID #3836).

Lastly, Defendants moved for the third district court to grant summary judgment on both claims.  R. 268 (Mot.) (Page ID #3583).  The third district court determined that summary judgment was appropriate on the ground that there was no genuine dispute of material fact regarding Luna's excessive-force claim or failure-to-train claim.  *Luna (Luna V) v. Bell*, No. 3:11-cv-0093, 2017 WL 1952401, at *5–7 (M.D. Tenn. May 11, 2017).  Luna appealed this judgment.  R. 297 (Notice of Appeal) (Page ID #3830).

## II.  DISCUSSION

### A.  The first district court did not abuse its discretion when it vacated the jury's verdict and ordered a new trial.

We review a decision to deny relief under Rule 60(b)(2) for abuse of discretion.  *See JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 584 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 2349 (2015).  "An abuse of discretion occurs when the district court relies upon clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).  We "will find an abuse of discretion only where there is a definite and firm conviction that the trial court committed a clear error of judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (quotation marks and citations omitted).

Under Rule 60(b)(2), a party may request relief because of "newly discovered evidence." The movant needs to show by clear and convincing evidence (1) that it exercised due diligence to obtain the evidence and (2) that the evidence is material, *i.e.*, would have clearly resulted in a different outcome.  *See JPMorgan Chase Bank*, 750 F.3d at 585 (first citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008); then citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012); and then citing *Good*, 149 F.3d at 423).  Thus, "the evidence cannot be merely impeaching or cumulative." *Good*, 149 F.3d at 423.

**1. Due Diligence**

The first district court did not abuse its discretion by determining that Luna acted diligently in requesting discovery responses that should have included the letter. For instance, the district court noted that "the resignation letter is dated five days after [Luna's] counsel filed the original complaint and served Rule 34 requests for production of documents upon Defendants Bell and Horton for (1) Mr. Amonette's personnel file, (2) all reports, memoranda, or documents pertaining to Mr. Toll's death, and (3) all emails and other written communications pertaining to Mr. Toll's death." R. 187 (Order at 4) (Page ID #1466). "On April 25, 2011, Defendants' counsel produced the requested documents, including Mr. Amonette's personnel file, from the Tennessee Department of Corrections." *Id.* at 4–5 (Page ID #1466–67). However, "[u]nbelievably, the resignation letter never surfaced until [Luna] read about it in a *New York Times* article nearly one year after trial." *Id.* at 5 (Page ID #1467) (footnotes omitted). In fact, "[t]he parties [did] not dispute that any letter written by then-Defendant Amonette to Defendant Bell should have been produced." *Id.* Thus, the first district court did not abuse its discretion by finding that Luna acted diligently in submitting discovery requests.

Additionally, the first district court correctly rejected Defendants' argument—that Luna did not act diligently because she failed to request the letter from Defendants after Amonette discussed the letter during his deposition. The first district court noted that "the reasons Mr. Amonette outlined in his resignation letter to Defendant Bell are inconsistent with those presented to [Luna's] attorneys through his testimony." *Id.* at 6 (Page ID #1468). In fact, "[w]hen questioned as to why he resigned, Mr. Amonette certainly made no mention about 'falsification of training records' or witnesses in this case 'that were not spoken to by internal affairs.'" *Id.* This caused the first district court to reject "Defendants' argument that '[Luna], in the exercise of due diligence, could have made a public records request to the State for a copy of Mr. Amonette's resignation letter.'" *Id.* A review of Amonette's deposition testimony supports the first district court's reasoning. R. 178-4 (Resp. Ex. 4 at 23–25, 66) (Page ID #1372–74, 1415). Thus, the first district court did not rely on clearly erroneous findings of fact to reach its conclusion.

Lastly, the second district court's determination that sanctions were not warranted for Defendants' failure to produce the letter is not inconsistent with the first district court's conclusion regarding Luna's diligence. As the second district court noted, "[a] court may assess attorney fees against a party under the court's inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Luna III*, 2016 WL 10719390, at *1. Because "[Luna's] counsel knew about the resignation letter during the deposition of Mr. Amonette before the first trial," Luna's knowledge "does weigh against finding of extraordinary sanctions sought against Defendants." *Id.* at *2. The second district court determined, however, that "[Luna's] failure to request this letter did not preclude [her] from obtaining a new trial." *Id.* Therefore, the second district court's decision denying discovery sanctions does not invalidate the first district court's determination regarding Luna's diligence—due diligence in seeking evidence through discovery and bad faith in failing to disclose evidence subject to discovery are separate issues.

## 2. Material, Controlling Evidence

The first district court also determined that the letter was material, controlling evidence, and it stated the following:

> The Court finds that Mr. Amonette's newly discovered resignation letter is material evidence that would have assisted the jury in weighing the credibility of the defense witnesses, would have affected depositions and the parties' presentation of trial evidence, and would most likely have led the parties to other material evidence.
>
> As to whether this newly discovered evidence clearly would have produced a different result if presented before the original judgment, the Court considers the affidavit of William Gary Blackburn that [Luna] submitted in support of her Motions. (Doc. No. 175-6.) Mr. Blackburn is a respected attorney who has practiced law in Tennessee for forty-three years and who has relevant experience from his involvement in many § 1983 cases. Based on this experience, Mr. Blackburn opines that the content of Mr. Amonette's resignation letter is significantly relevant and valuable to the issues in this civil rights case, including the issue of training of corrections officers. (*Id.* ¶¶ 11, 13.) Mr. Blackburn echoes the Court's findings that the letter is material to the credibility of the defense witnesses and substantially material to the presentation of evidence in this case and states that "the outcome of this trial in 2013 would, more likely than not, have been affected by the introduction and use of William Amonette's resignation letter." (*Id.* ¶¶ 11–13.)

> *Based on the unique facts of this case, the evidence presented in support of these Motions, and the Court's own experience gathered over the past thirty-five years, the Court finds clear and convincing evidence that Mr. Amonette's resignation letter is material, controlling, and clearly would have produced a different result if presented before the original judgment.* Therefore, [Luna] has satisfied the second prong of the Rule 60(b)(2) test and is entitled to relief under this rule.

R. 187 (Order at 7–8) (Page ID #1469–70) (emphasis added).

Based on these paragraphs, two of the first district court's reasons for finding materiality are invalid—impeaching witnesses and conducting discovery. First, to receive relief, "evidence cannot be merely impeaching." *Good*, 149 F.3d at 423. Luna, therefore, cannot receive relief because the letter "would have assisted the jury in weighing the credibility of the defense witnesses." R. 187 (Order at 7) (Page ID #1469). Second, Luna needed to show that the letter "clearly would have produced a different result if presented before the original judgment." *Good*, 149 F.3d at 423 (quoting *N.H. Ins. Co. v. Martech U.S.A., Inc.*, 993 F.2d 1195, 1200–01 (5th Cir. 1993)). Thus, Luna cannot receive relief because the letter "would have affected depositions and the parties' presentation of trial evidence, and would most likely have led the parties to other material evidence." R. 187 (Order at 7) (Page ID #1469).

Impeaching witnesses and conducting discovery, however, are not the only reasons for the first district court's conclusion. The first district court also determined that the letter clearly would have produced a different result regarding Luna's claims because of Blackburn's assessment, the evidence in the parties' motions, the unique facts, and the first district court's own experience. R. 187 (Order at 7–8) (Page ID #1469–70). In light of this reasoning, we cannot say that the first district court abused its discretion by resolving that the letter is material and controlling.

In summary, "[b]ecause we do not have a definite conviction" that the first district court "committed a clear error of judgment," *JPMorgan Chase Bank*, 750 F.3d at 585 (quotation marks and citations omitted), the first district court did not abuse its discretion in finding Luna had satisfied each element of Rule 60(b)(2). Therefore, we affirm the first district court's order

granting Luna relief under Rule 60(b)(2) from the judgments and from the order denying a new trial.

**B. The second and third district courts correctly denied Defendants' requests for reconsideration.**

Abuse of discretion is also the applicable standard for reviewing a district court's denial of a motion for reconsideration under Federal Rule of Civil Procedure 54(b). *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952–53 (6th Cir. 2004). We have stated that "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (alteration in original) (quoting *Rodriguez*, 89 F. App'x at 959). Because the first district court acted within its discretion to grant Luna relief under Rule 60(b)(2), we cannot conclude that it was improper to deny Defendants' requests for reconsideration, and we affirm the orders.

**C. The third district court improperly granted Defendants summary judgment.**

We review the grant of summary judgment de novo. *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752 (6th Cir.), *cert. denied*, 137 S. Ct. 531 (2016). "Summary judgment is warranted only if the record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), *cert. denied*, 136 S. Ct. 792 (2016).

When considering Defendants' motion for summary judgment, the third district court reviewed only new evidence that the jury did not consider. *See Luna V*, 2017 WL 1952401, at *4. For instance, the third district court noted that there were "a number of material factual disputes regarding the excessive-force claim," but "[t]he jury resolved those disputes in favor of the defendants." *Id.* at *5. "Because [Luna] failed to prove that Doss and Horton violated Toll's constitutional rights, she necessarily [could not] establish that Bell's failure to ensure adequate

training *caused* any such violation." *Id.* at *6. Thus, for both claims, the third district court did not examine any factual disputes that the jury already considered.

By granting a new trial, however, the first district court vacated the jury's findings. We have stated "that the order granting the new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause." *Miller v. United States*, 173 F.2d 922, 924 (6th Cir. 1949) (quoting *United States v. Ayres*, 76 U.S. 608, 610 (1869)). Moreover, we concluded that "[w]hen [a] verdict [is] set aside the issues of fact [are] left undetermined, and until they should be determined anew no judgment on the merits [can] be given." *Id.* (quoting *Slocum v. N.Y. Life Ins. Co.*, 228 U.S. 364, 380 (1913)). We also clarified that "a court [cannot] adopt the evidence heard upon the first trial as the evidence in the second." *Id.*; *see also Gaedeke Holdings VII LTD v. Baker*, 683 F. App'x 677, 682 (10th Cir. 2017) (holding "that once Gaedeke sought and received a new trial, this vacated the jury's verdict and the corresponding judgment").

The first district court's order granting a new trial did not limit the new trial's scope. This is apparent from the order's language, which suggests that the letter would have had sweeping influence over the trial: "the letter is material to the credibility of the defense witnesses and substantially material to the presentation of evidence in [Luna's] case" because "the outcome of this trial in 2013 would, more likely than not, have been affected by the introduction and use of William Amonette's resignation letter." R. 187 (Order at 7–8) (Page ID #1469–70) (second quotation quoting R. 175-6 (Mem. Ex. 6 ¶¶ 11–13) (Page ID #1256)). Thus, the first district court granted a completely new trial, requiring a new jury to examine anew *all* factual disputes.[2]

Additionally, when considering Defendants' motion for summary judgment, the third district court did not use the proper standard. For instance, the third district court stated that "the question implicit in the defendants' Motion for Summary Judgment is whether [Luna's] new evidence is sufficient to call into doubt the credibility of any of the witnesses on a material matter or to cast any of the evidence offered at trial in a different light, such that a new trial is

---

[2]The district court did not order a partial new trial but completely vacated the judgments for Defendants.

actually warranted"—which is not the standard for a motion for summary judgment. *Luna V*, 2017 WL 1952401, at *2. Instead, the third district court should have reviewed *all material facts* in a light most favorable to Luna to determine whether to grant summary judgment to Defendants. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In conclusion, as the third district court noted, "[t]here clearly are disputed issues of fact in this case—that is why it went to trial in the first place." *Luna V*, 2017 WL 1952401, at *2. The addition of the Amonette letter provides even more disputed material facts regarding Luna's claims. Therefore, we reverse the third district court's order granting summary judgment to Defendants and remand the case to the third district court to conduct a new trial regarding both of Luna's claims.

## III.  CONCLUSION

Thus, we **AFFIRM** the first district court's order granting Luna relief under Rule 60(b)(2) from the judgments and from the order denying a new trial. We also **AFFIRM** the orders denying Defendants' requests to reconsider. Lastly, we **REVERSE** the third district court's order granting summary judgment to Defendants, and we **REMAND** for further proceedings consistent with this opinion.