**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0554n.06

**No. 18-6233**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JAMES A. BILSKI; CHARLES M. HERALD,    )
    )
    Plaintiffs-Appellants,    )
    )
    v.    )
    )
RYAN McCARTHY, Secretary, Department of the    )
Army; LEE G. HUDSON; STEPHEN L. SHARP;    )
CHRISTOPHER L. WILLOUGHBY; DONALD    )
MCKEEHAN,    )
    )
    Defendants-Appellees.    )
    )
    )

**FILED**
Nov 01, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

**BEFORE: ROGERS, WHITE, and READLER, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** In this employment-discrimination case, James Bilski appeals the judgment entered in favor of the Defendant Secretary of the Army following a bench trial on Bilski's age-discrimination claim, and Bilski and Charles Herald appeal the district court's grant of summary judgment on their retaliation claims and denial of their motion to set aside the order dismissing those claims. We AFFIRM.

## I.     BACKGROUND

This case arises from events at the Blue Grass Army Depot (BGAD) in Richmond, Kentucky, where the Army stores weapons and chemical munitions in storage bunkers referred to as "igloos." Bilski and Herald were electronics mechanics in BGAD's Intrusion Detection System (IDS) Maintenance Section, Directorate of Emergency Services, and were responsible for the

installation, maintenance, modification, and repair of the IDS. "The IDS protects not only the munitions themselves (which sometimes contain classified components) but also BGAD's systems for communicating, storing and discussing classified information." R. 14 PID 244 (internal citation omitted). Plaintiffs were required to possess security clearances and to be qualified under the Army's Arms, Ammunition and Explosives (AA&E) Program; security checks for AA&E employees are repeated every three years.

Donald McKeehan, an Antiterrorism Officer at BGAD, completed Bilski's 2013 annual performance evaluation and gave Bilski the highest rating—exceeds standard/excellence—in all categories: technical competence, adaptability and initiative, working relationships and communications, and responsibility and dependability.

Bilski had more than 20 years' experience in federal service and had served as an electronics mechanic or electronics/mechanical mechanic for more than thirteen years, R. 14 PID 245-46, when he applied for promotion to the position of Electronic Security Assessment Officer/Physical Security Specialist in early 2014. McKeehan interviewed two candidates in March 2014, Bilski, then 54 years old, and Christopher Willoughby. McKeehan awarded the promotion to Willoughby, who was under the age of 40.

During the promotion process time frame, Herald, who worked with Bilski, overheard a conversation between McKeehan and BGAD Police Chief Richard Bobo to the effect that they wanted to go with the "younger guy" for the Electronic Security Assessment Officer position because the other person was "close to retirement." R. 14 PID 246; R. 46 PID 919.

After Herald told Bilski what he had overheard, Bilski filed an EEO complaint with the Department of the Army in June 2014. Herald provided a witness statement in support of Bilski's EEO complaint regarding the McKeehan-Bobo conversation.[1]

Plaintiffs' verified complaint alleged that Bilski's EEO complaint and Herald's participation as a witness precipitated retaliation by Defendant that included investigations and indefinite suspensions without pay. Defendant countered that the adverse employment actions resulted from Plaintiffs' misconduct, not their EEO complaints.

The district court summarized the backdrop to the adverse employment actions:

> In April 2015, the Joint Munitions Command ("JMC"), which oversees BGAD, conducted a periodic inspection and found that IDS inspection/testing (for which the plaintiffs were responsible) was not being conducted properly. Bilski and Herald were temporarily detailed to non-AA&E Public Works positions until an AR-190-11, Chapter 2, inquiry into their reliability and trustworthiness could be completed. The plaintiffs were formally removed from the AA&E program after the inquiry was completed. A few days later, the plaintiffs were notified that the Director of Emergency Services had proposed their outright remo[val] from federal service for failing to meet a condition of employment, failing to observe written regulations and procedures, and for delay in carrying out instructions. Shortly thereafter, Deputy Commander Sharp issued a decision on their removal [] which sustained all charge[s] in the proposed removal. However, Sharp determined that, based on prior performance and absence of prior discipline, the plaintiffs had the potential for rehabilitation in positions not involved with AA&E, and mitigated their proposed removal to a 10-day suspension, followed by reassignment to duties not involving access to AA&E.
>
> A private contracting company discovered tampering with the alarms in several igloos and a building a month later. Specifically, it was discovered that someone had intentionally wired resistors to stop communication between the igloos and the security desk, and a "defeat key" caused the secure/access switch to remain secure at all times. The [FBI] and the Army's Fort Knox Criminal Investigation Division ("CID") were notified and CID opened an investigation in late October 2015. The report found probable cause existed to believe the plaintiffs

---

[1] Herald provided the following statement:

During the period of said event I . . . was located in the building of S-164 . . . in, what is now, Captain Williams's office. I had to ask my Supervisor, at the time, Donald McKeehan a question concerning my duties. While walking to his office I overheard him and Chief Bobo talking about the recent job interviews and how they wanted to go with the younger guy because the other one is close to retirement. I did not know at the time who this concerned or whom they were referring to.

R. 43-11 PID 815.

committed the offense of Wrongful Damage to Government Property when they failed to conduct maintenance of critical storage facilities and bypassed the alarms using "defeat keys."

The plaintiffs' access to BGAD was revoked on November 24, 2015 by BGAD Commander Colonel Hudson. Hudson based this decision on his judgment that their actions posed a bona fide risk to Government property and interests. Deputy Commander Sharp proposed their indefinite suspension from federal service that same day. BGAD Commander Hudson indefinitely suspended the plaintiffs from federal service on January 14, 2016.

The United States Attorney's Office for the Eastern District of Kentucky notified the plaintiffs on August 22, 2016, that [it] would not be pursuing criminal charges because the government "[did] not believe there [was] sufficient evidence to prove criminal conduct beyond a reasonable doubt." The letter noted, however, that the evidence indicated that the plaintiffs "likely failed to follow governing regulations, procedures, and/or protocols in discharging their duties, and that their conduct likely undermined the integrity of the security system protecting the [BGAD's] munitions and other inventory."

The plaintiffs promptly filed suit following receipt of the U.S. Attorney's letter.

R. 46 PID 908-10/Op. 6/25/18; *see also* R. 65 PID 1114/Op. 10/22/18 (incorporating the facts outlined in opinions of 8/14/17 and 6/25/18).

Plaintiffs deny any wrongdoing, explaining that pursuant to a work order, Bilski installed resistors (also referred to as "defeat keys") on certain igloos and buildings because the alarms were defective and required repair parts to return them to operational status. According to Plaintiffs, the resistors did not compromise the IDS security system. Appellants' Br. 7-12.

## II.    PROCEDURAL HISTORY

Plaintiffs' two-count verified complaint named as Defendants the Secretary of the Department of the Army (Secretary), BGAD Commander Lee Hudson, Deputy Commander Stephen Sharp, and BGAD employees McKeehan and Willoughby. Count I alleged that Defendants failed to promote Bilski in violation of the Age Discrimination in Employment Act (ADEA). Count II alleged that Defendants subjected Plaintiffs to retaliation after Bilski filed, and

Herald participated in, Bislki's EEO complaint alleging age discrimination, including by reassignments, criminal investigation, and indefinite suspensions without pay.

On Defendants' motion for partial dismissal, the district court dismissed the claims against the individual Defendants and dismissed the retaliation claims to the extent they were based on Plaintiffs' removal from the AA&E program.  R. 14 PID 264/Op. 8/14/17.

Defendant Secretary then filed a motion for partial dismissal and for summary judgment on the remaining claims.  The district court denied summary judgment on Bilski's ADEA claim and granted summary judgment on Plaintiffs' retaliation claims.

Following a bench trial, the district court found in Defendant Secretary's favor on Bilski's ADEA claim and entered judgment.  The district court denied Plaintiffs' motion to set aside its order dismissing the retaliation claims, Fed. R. Civ. P. 60(b)(2).  This appeal followed.

### III.    ADEA CLAIM

Bilski's sole challenge regarding his ADEA claim is that the district court erroneously applied the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), at the bench trial when it should have applied *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983).  Bilski argues that the *McDonnell-Douglas* analysis applies only at the summary judgment stage, not to evaluation of evidence at trial, and requests that the panel reverse the district court and remand with instruction to apply the *Aikens* standard. Appellants' Br. 12-14.

Defendant acknowledges that courts should not require a plaintiff in a discrimination case to re-prove a prima facie case after the plaintiff has survived summary judgment, but asserts that the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences drawn therefrom on the issue whether the defendant's legitimate, nondiscriminatory

5

reason for its adverse action is pretextual. Defendant further asserts that even if the district court erred, Bilski fails to show how any error harmed him because the district court's conclusions of law acknowledge that Bilski had established a prima facie case. Appellees' Br. 24.

**A.**

Whether the district court applied the correct analytical framework to Bilski's ADEA claim at the bench trial is a question of law this court reviews de novo. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 821, 826 (6th Cir. 2000) (noting that it is well established that "after a trial on the merits, a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination," and that "even after a district court uses a faulty framework, a reviewing court can itself look at a complete record to decide the case using the proper mode of review").

**B.**

In evaluating the Defendant Secretary's motion for summary judgment on Bilski's ADEA claim, the district court determined that Bilski had established a prima facie case of age discrimination; the Secretary had articulated a legitimate, nondiscriminatory reason for not promoting Bilski (Willoughby performed better at his interview, had relevant coursework in physical security, and had experience working in a leadership position); Bilski presented sufficient evidence that he was as qualified for promotion as Willoughby; and Bilski offered other probative evidence of discrimination, i.e., the statements Herald overheard. The district court concluded that a reasonable trier of fact "could infer from the candidate's qualifications, the nature of the [McKeehan-Bobo] conversation, McKeehan's position related to the hiring decision, and timing of the conversation, that age was a but-for cause for Bilski's non-selection." R. 46 PID 916-20/Op. 6/25/18.

## C.

The district court discussed the *McDonnell Douglas* framework in its written decision after the bench trial. The district court's conclusions of law opened with the determination that Bilski had established a prima facie case of age discrimination. The district court's findings of fact also addressed the prima facie elements of Bilski's ADEA claim, i.e., that he was a member of the class protected by the ADEA (individuals who are at least 40 years of age), that he was otherwise qualified for the promotion to Physical Security Specialist, that he was not promoted, and that Defendants promoted Willoughby, who was under the age of forty. *See* R. 66 PID 1123-25 ¶¶ 3, 6, 7, 11.

> We observed in *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715 (6th Cir. 2004):
>
> When entertaining a motion for judgment as a matter of law following a trial on the merits in a Title VII case, "'a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination.'" *Gray* [*v. Toshiba Am. Consumer Prods., Inc.*], 263 F.3d [595,] 599 [6th Cir. 2001] (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 821 (6th Cir. 2000)). The Supreme Court has explained:
>
>> when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's [termination], the factfinder must then decide whether the [termination] was discriminatory within the meaning of Title VII. At this stage, the *McDonnell–Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity."
>
> *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15 [] (1983) (footnote and internal citations omitted). That is, "the sole remaining issue [is] 'discrimination vel non.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 [] (2000) (quoting *Aikens*, 460 U.S. at 714 []). Consequently, "we cannot simply hold that the plaintiff's failure to provide evidence of an essential element of [his] prima facie case is dispositive here. Rather, we must look to the ultimate question—whether the plaintiff has proven that [his] discharge was intentionally discriminatory." *Gray*, 263 F.3d at 599.

391 F.3d at 720–21 (alterations to citations added).

Under these authorities, the district court should not have revisited whether Bilski established a prima facie case of age discrimination. But Defendants are correct that *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000), permits the trier of fact to consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue whether the defendant's articulated legitimate, nondiscriminatory reason for the adverse employment action is pretextual. Appellees' Br. 23.

In any event, any error in considering *McDonnell Douglas* and Bilski's prima facie case was harmless because the district court did not focus on the prima facie elements. Instead, the court complied with *Aikens*, 460 U.S. at 714–15, by analyzing the ultimate question—whether Bilski established that Defendant's failure to promote him constituted intentional discrimination. R. 66 PID 1129-30 ("Even if [Bilski] had established that the reason given for the employment decision was false, he failed to show that discrimination was the real reason for the decision.")

## IV. DISMISSAL OF RETALIATION CLAIMS

Plaintiffs assert that the district court erred in granting summary judgment on their retaliation claims because they presented direct evidence of retaliation through the conduct of BGAD Deputy Commander Sharp, specifically, Sharp's offer to reduce Plaintiffs' ten-day suspensions to a "letter of concern" if Plaintiffs agreed to drop their EEO complaints. Appellants' Br. 14-15.

### A.

We review the district court's grant of summary judgment de novo. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Summary judgment is appropriate if the movant establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The ADEA prohibits an employer from retaliating against an employee for testifying, assisting, or participating in any manner in an investigation of age discrimination. 29 U.S.C. § 623(d); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (citing 29 U.S.C. § 623(d)). A plaintiff may establish an ADEA violation by either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

> Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* In *Gross v. FBL Financial Services, Inc.*, the Supreme Court recently emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." 557 U.S. 167, 129 S. Ct. 2343, 2351 n.4, 174 L. Ed. 2d 119 (2009).
> . . . .
> *Gross* overrules our ADEA precedent to the extent that cases applied Title VII's burden-shifting framework if the plaintiff produced direct evidence of age discrimination. *Gross* enunciated the correct standard for ADEA claims as whether the plaintiff has proven "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision. *Id*. at 2351.

*Id.*

Where, as here, Plaintiffs rely on circumstantial evidence in their response to Defendant's motion for summary judgment, they must establish a prima facie case of retaliation under the ADEA by showing that 1) they engaged in protected activity, 2) Defendant was aware that Plaintiffs engaged in that protected activity, 3) Defendant took an adverse employment action against Plaintiffs, and 4) there is a causal connection between the protected activity and the adverse action. *Blizzard*, 698 F.3d at 288; *Geiger*, 579 F.3d at 622.

The causal connection between the protected activity and the adverse employment action necessary for a prima facie retaliation case can be established on the basis of close temporal

proximity. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). We have determined that a two- to three-month period between protected activity and the adverse employment action was sufficient to establish a causal connection. *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (three months between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work sufficed to establish causal connection at prima facie stage). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525 ("'[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to' a causal connection." (alteration in original) (quoting *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001))).

**B.**

Defendant Secretary argued that he was entitled to summary judgment on the remaining[2] retaliation claims because Plaintiffs lacked evidence to prove the Army acted with a retaliatory intent. R. 35 PID 397-402. Defendant disputed only the fourth prima facie element—that a

---

[2] The district court had earlier dismissed Plaintiffs' retaliation claims pertaining to their removal from the AA&E program. R. 14 PID 264/Op. 8/14/17. Plaintiffs do not appeal that determination.

causal connection existed between Plaintiffs' EEO complaints and the alleged adverse employment actions—arguing that because the first alleged act of retaliation occurred more than one year after Plaintiffs' protected activity, "Plaintiffs get no inference of retaliation based on the timing of the alleged retaliatory actions." R. 35 PID 397; R. 45 PID 867/Reply to Pls.' Resp. to Mot. for Summ. J.

Plaintiffs' response to Defendant's motion neither mentioned Sharp's offer to settle the EEO complaints nor claimed to rely on direct evidence. Instead, Plaintiffs argued:

> the causal connection was Bilski's formal complaint of discrimination which was filed in April of 2014, a complaint which listed Herald as a witness to the age discrimination. Thereafter, the plaintiffs were investigated, suspended, and ultimately terminated as the result of events which can be followed on a continuum which are set forth in the investigative file.
> . . . .
> During the investigation of the discrimination and retaliation claim of the plaintiffs, they each provided a written declaration which details the events from the date of Bilski's formal complaint of age discrimination through the adverse employment actions taken against them. The declarations detail not only evidence of discrimination, but also a chilling story of how a life can change simply for availing themselves of the legal remedies available pursuant to law.
>
> Instead of simply alleging that the retaliation claims of the plaintiffs grow out of the substantive discrimination charge, as set forth more fully in their declarations, the plaintiffs have produced sufficient evidence that the adverse action would not have been taken "but for" their protected conduct.

R. 43 PID 755-56.

Defendant's reply argued that Plaintiffs cited no evidence that would surmount the absence of temporal proximity, since they cited no evidence of retaliatory intent, but instead offered only a general reference to the EEO investigative file without citations. R. 45 PID 868.

After applying *McDonnell Douglas*'s burden-shifting framework, the district court granted Defendant summary judgment on the basis that Plaintiffs failed to establish the requisite causal connection between Bilski's age-discrimination EEO complaint and the adverse employment

actions, noting that the first adverse action occurred more than a year after Bilski filed his age-discrimination EEO complaint. The district court further determined that even if Plaintiffs established a causal connection, Defendant articulated legitimate, nondiscriminatory reasons for Plaintiffs' ten-day suspension, bar from BGAD, and indefinite suspension, and Plaintiffs could not establish pretext because they "offer no genuine issue of material fact concerning the validity of the Secretary's explanation for the actions taken." R. 46 PID 920-23/Op. Granting Summ. J. 6/25/18.

## C.

Plaintiffs argue on appeal that the district court erred in dismissing their retaliation claims where they "offered direct evidence of retaliation through the conduct of Stephen Sharp." Appellants' Br. 14. However, as noted, Plaintiffs did not argue in response to Defendant's motion for summary judgment that they presented direct evidence of retaliation; rather, they presented circumstantial evidence and argued that their retaliation claims were thus governed by *McDonnell Douglas*'s burden-shifting framework. R. 43 PID 756. Plaintiffs first advanced their direct-evidence argument in their Rule 60(b) motion for relief from judgment filed after the bench trial, R. 61 PID 964-65; R. 63 PID 1026, which is discussed in § V below.

On the record before it, the district court properly determined that Plaintiffs failed to show a genuine issue of fact regarding whether they established a prima facie case of retaliation. The district court cannot have erred in applying *McDonnell Douglas*'s burden-shifting framework where Plaintiffs did not argue in response to Defendant's motion for summary judgment that they presented direct evidence of retaliation. Since Plaintiffs advance no other argument to support that the district court erred in granting summary judgment on their retaliation claims, their challenge fails.

## V.     DENIAL OF RULE 60(b)(2) MOTION

Plaintiffs' final argument is that the district court erred in denying their motion to set aside the order dismissing their retaliation claims.

### A.

We review a district court's denial of a Rule 60(b)(2) motion for abuse of discretion. *Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018). "An abuse of discretion occurs when the district court relies upon clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard." *Id*. (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)).

Rule 60(b)(2) permits relief from a final judgment where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To prevail on a Rule 60(b)(2) motion, a movant must demonstrate that 1) he exercised due diligence in obtaining the information, and 2) the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment. *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (internal citation and quotation marks omitted).

### B.

The newly discovered evidence Plaintiffs urged the district court to consider was Deputy Commander Sharp's testimony at the bench trial. Plaintiffs argued in their Rule 60(b)(2) motion that before Sharp testified at the bench trial, he had denied in two sworn statements to EEO investigators that there was any causal link between Plaintiffs' EEO complaints and his proposed settlement of their disciplinary charges. Plaintiffs asserted that in contrast to his sworn EEO statements, Sharp's trial testimony established a direct causal link between the dismissal of the

13

EEO complaints and Sharp's proposed discipline, and thus the district court should reinstate their retaliation claims.

On appeal, Plaintiffs assert, correctly, that they "had made Sharp's sworn statements to EEO investigators part of their response to the defendant's motion to dismiss," but Plaintiffs fail to acknowledge that they did not mention Sharp in their response to Defendant's motion for summary judgment, which was filed 1½ years after the motion to dismiss. And, although Plaintiffs attached their EEO declarations to their summary judgment brief, they never explained the declarations' significance or the inferences they wanted the district court to draw from them.

Sharp's trial testimony did differ from his statements to the EEO investigators. When asked by the EEO investigators whether he told Plaintiffs that if they "dropped [their] EEO complaint the charge of termination would be reduced to a letter of concern and if the complainant[s] refused the offer [they] would receive a letter of reprimand plus 3-10 days without pay on the street, and due to the reprimand [they] would [not] be eligible for safety pay at the end of the year?" Sharp denied it. R. 7-1 PID 170, R. 7-2 PID 181.

Plaintiffs rely on Sharp's testimony at the bench trial on re-cross examination, after counsel reviewed his two statements to the EEO and those statements were admitted into evidence:

Q: Sir, isn't it true that you link the disposition of this disciplinary action to their resolution of this EEO complaint in your proposal to them?

A. It was, but would you allow me to explain why I did that?

Q: I would love for you to explain it, yes, sir.

A. Okay. At the time –

Q. But you do—I want to get a clear answer to my question. You did link the disposition of this disciplinary action to their dismissing their EEO complaint?

A. I did bring it up, yes. . . . We had a union president that was very difficult to get along with. We had—I can't tell you how many grievances and arbitrations that were already scheduled. Two days out of my week was set aside to hear grievances. We had several EEO complaints, and there's a cost doing all these. I had no knowledge of what their EEO complaint was. I heard it was a bogus complaint, but

14

I don't know. But I brought it up. It would be one more thing to take off the plate, to get rid of some more of these EEO complaints, these arbitrations, these grievances. In hindsight, I wish I hadn't done it, but I did do it at the time because our plate was so doggone full.

R. 73 PID 1457-59.

## C.

The district court denied Plaintiffs' 60(b)(2) motion, concluding that Sharp's trial testimony did not constitute direct evidence of retaliation and that regardless of the potential impact of Sharp's trial testimony, Plaintiffs did not exercise due diligence in obtaining the information because Plaintiffs did not depose Sharp. R. 65 PID 1118-19.

Plaintiffs take issue with the district court's determinations that Sharp's testimony was not direct evidence of retaliation and would not have produced a different result had it been presented before summary judgment, and that Plaintiffs did not exercise due diligence in obtaining the information.

The district court did not abuse its discretion in denying Plaintiffs' Rule 60(b)(2) motion because Plaintiffs failed to show that they exercised due diligence in obtaining information regarding Sharp's settlement offer. First, Sharp's trial testimony did not present newly discovered evidence; Plaintiffs had already asserted in their EEOC declarations what Sharp testified to at trial—that Sharp conditioned his offer to reduce Plaintiffs' discipline on their dropping the EEOC complaint. Second, Plaintiffs did not depose Sharp, and their response to Defendant's motion for summary judgment did not even mention Sharp. Finally, Plaintiffs cite no authority to support that lack of financial resources excuses Rule 60(b)(2)'s diligence requirement.

## VI.    CONCLUSION

For these reasons, we AFFIRM in all respects.