NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0099n.06

Nos. 24-1400/1599

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WILLIAM KELLY, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| GRAPHIC PACKAGING INTERNATIONAL, LLC, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

**FILED**

Feb 21, 2025

KELLY L. STEPHENS, Clerk

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** William Kelly, an African American man, brought suit for disability, race, and employment discrimination and retaliation under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Michigan Persons with Disabilities Act, MCL § 37.1201 et seq.; and the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq. He alleges that his employer, Graphic Packaging International, LLC (GPI), discriminated and retaliated against him because of his race and disability by passing him over for promotions, placing him on unpaid leave, and ultimately terminating him after determining that his work accommodation requests were too burdensome.

On appeal, Kelly challenges the district court's grant of judgment to GPI on his ADA retaliation and interference claims as well as the court's award of costs against him. He also

appeals the district court's denial of his motion for reconsideration, for a new trial, and to set aside the judgment. For the reasons set forth below, we **AFFIRM**.

## I.

William Kelly began working for GPI in November 2014, when he was hired into GPI's Board Mill manufacturing facility as a production employee. The facility is filled with large paper machines that rise four stories in height, with employee workstations at various levels. To reach these workstations, employees must regularly navigate stairs and ladders, making the physical nature of the job an essential aspect of the employees' daily responsibilities.

For the first eight months of his employment, Kelly operated a K-3 Machine before sustaining a non-work-related ankle injury while off-duty. As a result, he was away from work for approximately one year, during which he received paid short-term and long-term disability benefits. In June 2016, after being cleared to resume his job duties with no restrictions, Kelly returned to work, but he had to complete the orientation process again because of his extended absence. Additionally, GPI assigned him to the K-1 Machine, which many employees regarded as a more strenuous work location than the K-3 Machine. GPI never explained the reason for this reassignment or why Kelly would now be supervised by people who were junior to him in experience. In November 2016, Kelly suffered another ankle injury, this time while on the job. Though advised to stay off his feet for a short period of time, Kelly was able to return to operate the K-1 Machine after a few weeks.

But Kelly's injuries continued to mount. In February 2017, he had a car accident and sustained a thumb injury. As a result, he was granted a leave of absence, which lasted about six months. During this leave, Kelly received wage-loss benefits through an automobile insurance policy (rather than from GPI) and salary promotions through the Collective Bargaining

Agreement's line-of-progression. Kelly's personal physician approved him to return to work with no restrictions in August 2017. After passing GPI's mandatory return-to-work physical, Kelly resumed a new role as a Fourth Hand on the K-3 Machine—the same machine he was originally hired to operate, but with an increased pay rate.

Just a few days into his return, an emergency arose in which the basement of a K-1 Machine became flooded. To address the situation, the plant manager instructed each department to send extra personnel in their departments over to K-1 to assist in the cleanup. Kelly was one of these employees assigned to help. While he was hosing down the K-1 area, Kelly felt a sharp pain shoot through his hand and up his forearm. The K-1 supervisor assessed the situation and determined that Kelly was unable to continue performing the job duties at K-1, so he sent Kelly back to K-3. The following day, Human Resources Manager Jennifer Strey met with Kelly and explained that the pain he was experiencing indicated the need for a reassessment of his hand by his physician. After an evaluation, Kelly's doctor advised him to refrain from work entirely. Kelly informed GPI of the medical recommendation and explained that he expected to be out of work for about two months.

But two months turned into two years. Between August 2017 (when he went on leave) and August 2019, GPI never received updated information from Kelly about his ability to return to work, with or without restrictions, despite an agreement that Kelly would check in every two weeks. Then, on August 7, 2019, Kelly submitted a doctor's note to GPI's Human Resources department indicating that he could return to "full duty" at the end of the month.

The Collective Bargaining Agreement (CBA) includes leave policies for employees who are unable to work for medical reasons. Under the CBA, GPI may grant a leave of absence for up to two years if the employee's injury occurred outside the workplace. However, if an employee is

unable to return to work within two years, either because he or she cannot perform the essential functions of the job or due to a lack of a reasonable accommodation, the employee's seniority and employment will be terminated.

Kelly's proposed return-to-work date, August 26, 2019, was past the prescribed two-year leave limitation period. Despite the looming deadline, GPI continued to try to accommodate Kelly by scheduling a return-to-work physical. Prior to this physical, though, Kelly submitted updated restrictions from his doctor, which limited his lifting, pushing, and pulling to no more than fifty pounds with his injured hand and no repetitive climbing of ladders or stairs. Despite these limitations, Kelly and GPI proceeded with the physical on September 19, 2019. A few days later, Kelly emailed GPI that he had completed the examination and inquired about what job he would be assigned to upon his return. But GPI determined that the updated restrictions—specifically his limitations on climbing—would inhibit his ability to perform all essential job functions, no matter the position. Instead of terminating Kelly's employment, as the CBA allowed for, GPI notified the Union that it would be placing Kelly on extended unpaid leave.

Kelly filed this lawsuit on September 3, 2021, while he was on his second two-year leave of absence. The leave period expired shortly after the filing, but GPI did not terminate Kelly's employment. On June 6, 2023, the district court granted in part and denied in part GPI's motion for summary judgment, dismissing all but Kelly's ADA retaliation claim (Count III). The district court held a bench trial on this claim, which took place from January 30, 2024, to February 5, 2024. After making detailed findings of fact, the court concluded that Kelly failed to prove that GPI retaliated against him or interfered with his rights in violation of the ADA. Kelly filed a post-trial motion for reconsideration and relief from judgment, and GPI moved to recover costs. The

district court denied his motion and awarded GPI costs in the amount of $19,640.76. Kelly timely appealed.

## II.

After a bench trial, the district court's findings of fact are reviewed for clear error, and its legal conclusions are reviewed de novo. *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 714 (6th Cir. 2023). "Clear error will be found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 808 (6th Cir. 2015).

We review denials of motions for reconsideration, relief from final judgment, and a new trial under an abuse of discretion standard. *See Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001) (motion to alter or amend the judgment)*; Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018) (motion for relief from final judgment); *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018) (motion for a new trial).

"Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). It "occurs when the district court relies upon clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

### A. Retaliation

The ADA prohibits an employer from retaliating against an employee for engaging in protected activity. It provides:

> No person shall discriminate against any individual because such individual has opposed an act or practice made unlawful by this chapter or because such individual has made a charge or because such individual testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). "Retaliation claims are treated the same whether brought under the ADA or Title VII." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). So absent direct evidence of retaliation, courts employ the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This paradigm places the initial burden of establishing a prima facie case of retaliation on the plaintiff. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Finally, accepting the defendant's legitimate reason, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual. *Id.*

Kelly argues that he has presented ample direct evidence of retaliation such that the district court erred in engaging in the *McDonnell Douglas* analysis. "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Kelly contends that he presented direct evidence of GPI's retaliatory motive through an email from Jennifer Strey indicating that Kelly would not be reinstated and was required to be "restriction-free" before being allowed to return to work. Therefore, he reasons, the district court erred in applying the *McDonnell Douglas* test.

The district court did not err in finding that Kelly presented no direct evidence of retaliation. The referenced email does not "require the conclusion" that GPI retaliated against Kelly. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Kelly needed to present more explicit evidence showing that GPI was going to terminate him because he made requests for accommodations. *See Imwalle*, 515 F.3d at 544. Conversely, Strey's email requires several inferential leaps to reach the conclusion that GPI retaliated against Kelly. Moreover, the evidence

at trial revealed that GPI's policy does not expect employees "to have a release that fully releases them without restrictions" to return to work. R. 166, Op., PageID.5475. The district court also explicitly found that GPI has no record and was never aware of any information being communicated to Kelly that he was required to have a full release with no restrictions. Kelly's unsubstantiated allegations do not rise to the level of direct evidence.

Accordingly, Kelly must first establish a prima facie case of retaliation through indirect evidence by proving: (1) he engaged in a protected activity; (2) GPI knew of the activity; (3) GPI took adverse employment action against him; and (4) a causal connection exists between the protected activity and the adverse employment action. *Rorrer*, 743 F.3d at 1046. Kelly maintains the same argument on appeal as he did at the district court. He argues that requesting an accommodation in his return to work is a protected activity that caused GPI to place him on extended medical leave without any reasonable accommodation or meaningful interactive process, which constitutes a materially adverse employment action. After finding the first two prongs of the prima facie analysis satisfied, the district court held that it need not resolve the question of whether unpaid leave was an adverse employment action because the case can be resolved at the fourth step. Assuming that GPI's placement of Kelly on unpaid leave is an adverse employment action, the district court found that the evidence showed that Kelly's request to return to work with accommodations was not the "but-for" cause of GPI denying his reinstatement and extending his medical leave. We agree.

The fourth prong of the prima facie analysis requires a plaintiff's protected activity to be the "but-for" cause of the employer's adverse action. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013)). Kelly cannot show that his placement on unpaid leave would not have occurred had he not

requested accommodations. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013). Kelly claims GPI put him on unpaid leave as "part of an ongoing pattern of retaliation for his protected requests under the ADA." Appellant's Br. at 20. However, the district court determined that GPI placed Kelly on extended medical leave because his restrictions prevented him from performing essential job functions, not because he tried to return with accommodations. Indeed, Kelly's job requires frequent climbing of ladders and stairs. Given that refraining from such activities was the exact medical restriction imposed on his return to work in 2019, GPI determined that Kelly would be unable to perform the essential job functions for his prior job as well as any other job at the plant.

More still, the record shows that over the course of nearly a decade of employment at GPI, Kelly only actively worked for a total of 15 months. The last day when Kelly performed any work was August 16, 2017. Yet, GPI was careful to follow the policies and procedures outlined in the CBA to which Kelly is bound. The CBA provides for termination if an employee does not return to work after a two-year leave period. Kelly failed to return to work by the two-year deadline, which put him at risk of termination. But to "give him the benefit of the doubt," GPI placed him on extended leave in lieu of termination. R. 166, Op., PageID.5488. Stated differently, GPI responded to Kelly's accommodation request with a better outcome (unpaid leave) than what the CBA prescribed (termination). And Kelly does not allege that GPI's leave and termination policies are themselves retaliatory.

Instead, Kelly responds that the temporal proximity between his request and GPI's placing him on unpaid leave satisfies the causation prong. But proximity in time, without more, rarely suffices to establish causation. *See e.g., Moore v. KUKA Welding Sys.,* 171 F.3d 1073, 1080 (6th Cir. 1999) (holding that the temporal proximity between the adverse action and the protected

activity coupled with other evidence, when viewed as a whole*,* supported the jury's finding of retaliation). Other than the closeness in time between his request and his being placed on leave, Kelly has failed to offer additional sufficient evidence to raise the inference that his accommodation request was the reason GPI placed him on extended leave. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

Accordingly, we affirm the district court's grant of judgment in favor of GPI on the retaliation claim.

**B. Interference**

The interference provision of the ADA makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" an ADA-protected right. 42 U.S.C. § 12203(b). We have recognized that a plaintiff may bring a viable interference claim for employment-related rights under this provision only against his or her employer. *Post v. Trinity Health-Michigan*, 44 F.4th 572, 577 (6th Cir. 2022). Although we have not explicitly outlined the elements of an ADA-interference claim, other circuits employ the four-part test used in anti-interference cases under the Fair Housing Act (FHA) in part "because the ADA anti-interference clause is identical to the anti-interference clause found in the FHA." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017). We agree with our sister circuits that this standard is instructive. *See id.*; *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). That test, much like the causation standard used to evaluate a § 12203(a) claim, requires a defendant to have "coerced, threatened, intimidated, or interfered *on account of* [the plaintiff's] protected activity." *Frakes*, 872 F.3d at 550–51 (emphasis added). Here, Kelly must adequately show a causal connection between his accommodation request and his leave, as was required for his retaliation claim.

Kelly maintains that the evidence presented at trial demonstrates that GPI interfered with his rights by improperly keeping him out of work, failing to engage in the interactive process, and ultimately retaliating against him for seeking an accommodation. He reasons that GPI's requirement that Kelly be entirely restriction free to return to work—an argument that we have already rejected—evinces coercion and intimidation and demonstrates that GPI intentionally interfered with Kelly's right to seek reasonable accommodations. Lastly, Kelly contends that GPI never explained to him why he could not return to work and deliberately avoided communication with Kelly and his counsel, which (according to Kelly) meets the standard of interference under § 12203(b).

To prevail on an interference claim, Kelly must demonstrate that GPI's action of placing him on extended unpaid leave directly interfered with his ability to exercise his rights under the ADA. However, we have already concluded that Kelly's accommodation request was not causally linked to GPI's decision to place him on leave. Without establishing a causal connection, Kelly cannot prove that GPI's actions were a form of interference under the ADA, as there is no direct evidence showing that GPI's conduct hindered Kelly's exercise of his rights.

Since Kelly cannot establish the necessary causal link between his accommodation request and GPI's actions, his interference claim—like his retaliation claim—cannot succeed. He has not demonstrated that GPI's conduct directly impeded his ability to seek or obtain a reasonable accommodation, which is required to meet the legal standard of interference under § 12203(b). Because no direct interference with his right to seek accommodation is evident, the district court did not err in granting judgment in favor of GPI on his interference claim.

C. **Kelly's Post-Trial Motion**

After the district court returned judgment in favor of GPI, Kelly moved for reconsideration and relief from judgment, as well as for a new trial. On appeal, Kelly's argument centers on his entitlement to relief from judgment under Rule 60(b) and for a new trial under Rule 59. Because the district court acted within its discretion in denying Kelly's post-judgment motions, we affirm.

*i. Motion for Reconsideration and Relief from Judgment*

In denying his motion for relief from judgment, the district court held that Kelly did not specifically argue that any of the justifications for relief from final judgment apply with respect to the court's opinion following the bench trial. Instead, it construed Kelly's motion as based on a mistake in the judgment under Rule 60(b)(1).

On appeal, Kelly retorts that relief is warranted under multiple subsections of Rule 60(b), including (b)(1), (5), and (6). Kelly makes two principal arguments, both of which mirror those we discussed above regarding the district court's judgment in favor of GPI on his retaliation claim. Primarily, he argues that the district court erred in refusing to set aside its prior judgment dismissing his ADA claims because GPI failed to engage in a meaningful interactive process, which is a fundamental violation of the ADA warranting grounds for relief under Rule 60(b). And second, he again states that he presented direct evidence of discrimination by way of an email from Jennifer Strey and that GPI's requirement that he be restriction free violated the ADA's requirement to provide reasonable accommodations.

The district court's decision to deny Kelly's motion for relief from the judgment under Rule 60(b)(1) was within its discretion. Applying the *McDonnell Douglas* framework, the district court concluded that Kelly could not establish a causal connection sufficient to satisfy the prima facie analysis. The court also reasonably concluded that GPI gave a legitimate, nondiscriminatory

reason for placing Kelly on leave after it determined that he could not perform the essential functions of his job by being restricted from climbing. Kelly offered no evidence in rebuttal. Accordingly, the district court properly denied relief because Kelly could not show by a preponderance of the evidence that he was retaliated against because of his protected activity.

Kelly also fails to demonstrate that "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The crux of Kelly's argument—that he was required to return to work restriction free—has already been discredited by clear evidence. And he can point to nothing in the record to the contrary. Finally, Kelly presents no additional or different facts evincing exceptional circumstances that support his motion under Rule 60(b)(6). He had to demonstrate "something more" or "different" than before to convince this court that he is entitled to relief. *See E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 468 (6th Cir. 2011). The district court did not abuse its discretion in denying Kelly's post-trial motion for relief from judgment.

### ii. Motion for a New Trial

A district court may grant a motion for a new trial under Federal Rule of Civil Procedure Rule 59 if it "determines that the verdict is clearly against the weight of the evidence." *Mys*, 886 F.3d at 599 (quoting *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)). Other valid grounds for awarding a new trial include "an error, defect or other act [that] affect[s] the substantial rights of the parties." *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001). In the case of a nonjury trial, a motion for a new trial may also be granted "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B).

Kelly offers two reasons for why he is entitled to a new trial. First, he argues that the district court wrongfully accepted GPI's legitimate, nondiscriminatory reason for not allowing

Kelly to return to work. Specifically, once again, he maintains that GPI's requirement that he be "restriction-free" violates the ADA's mandate that reasonable accommodations be provided unless doing so would cause undue hardship. And second, Kelly argues that events occurring after the trial are concrete evidence of GPI's retaliatory motive. He reasons that GPI suddenly relied on the CBA to terminate his employment post-trial, despite allegedly acknowledging at trial that the CBA did not apply to Kelly's situations.

We agree with the district court that Kelly's arguments lack merit. As previously stated in this opinion, the district court determined that GPI did *not* require its employees to return to work after a medical leave without restrictions, and there is no evidence that Kelly received a conflicting message. Kelly was also subject to the terms and provisions of the CBA providing for termination after a two-year leave of absence. We see no clear error in those findings. The court also noted that GPI gave Kelly the benefit of any doubt regarding the expiry of the first two-year leave period, even though his return-to-work date fell outside of that time period and triggered GPI's right to terminate him. And Kelly does not dispute that finding.

Moreover, the district court correctly concluded that Kelly's engagement with GPI in December 2024—after the conclusion of trial—has no bearing on his 2019 retaliation claim. Kelly's attempt to return to GPI in 2024 is immaterial to the trial issues, and the district court's rejection of that argument does not demonstrate a legal error, defect, or substantial impact on Kelly's rights that would justify reversal of the district court's judgment.

For these reasons, the district court did not abuse its discretion in denying Kelly a new trial for his retaliation claim.

**III.**

Kelly also challenges the district court's award of taxable costs against him. GPI seeks to hold Kelly accountable for deposition and trial transcript fees in the amount of $19,026.19. Kelly characterizes those costs as excessive, unreasonable, and unnecessary to obtain judgment. GPI counters that Kelly's arguments must fail because Kelly himself noticed most of the witnesses for deposition, despite GPI's objections that many of them were not material to the outcome of this case. The district court concluded that the depositions charged by GPI were, at the time, reasonably necessary to its defense of Kelly's claims.

Kelly has forfeited his challenge to the district court's grant of costs against him because he failed raise and develop the issue in his opening brief. Generally, an "appellant abandons all issues not raised and argued in its initial brief on appeal." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 540 (6th Cir. 2014) (internal quotations and citation omitted). Moreover, "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." *See Doe v. Mich. State Univ.,* 989 F.3d 418, 425 (6th Cir. 2021) (internal quotations and citation omitted). Although Kelly addressed the issue of costs in his reply brief, his omission of the argument in his opening brief is fatal to our review. We therefore deem the issue forfeited and affirm the district court's grant of costs against Kelly.

**IV.**

For the reasons stated above, in Case No. 24-1400, we **AFFIRM** the district court's judgment in favor of GPI and denial of Kelly's post-trial motion. And for Case No. 24-1599, we **AFFIRM** the district court's grant of costs against Kelly.